WILLIAM SHARPSTEEN, plaintiff in error,
*against*
WILLIAM M. TILLOU, defendant in error.

*H* made his will, by which he devised his house, &c. to his wife, and a comfortable maintenance to her, out of the income of his real estate, so long as she remained his widow; to his two sons, *E* and *I*, the use and improvement of all his real estate, except their mother's maintenance during her natural life ; and directed that after her decease, all his real estate should be sold ; and gave to his two sons, *E* and *I*, 150*l.* a piece, and to his 5 sons all the rest of his estate of all kinds, to be equally divided between them, and appointed *L*, *D*, and his son *I*, executors for the purposes in his will mentioned. *L* and *D*, strangers to the family, alone, proved the will, and took upon themselves its execution. The testator died, leaving a widow and his 5 sons, and the children of a deceased daughter. The widow having died, *I*, having also died without issue, and *E* and another son having died leaving issue, the two executors, *L* and *D*, sold the real estate. *Held*, that the objects of the testator, having been, in a great measure, defeated, and his intentions in giving the power frustrated, the power itself failed ; and the sale was consequently void, so far as it depended upon the power ; but the two surviving sons having also conveyed all their interest to the grantee of the executors ; *held*, that their conveyance passed 2-5 of the real estate ; that the power being inoperative, the real estate descended to the heirs at law.

The purposes of a testator, in giving a power by his will to sell real estate, must be ascertained from all the provisions of the will ; and the objects of the power must be considered in connexion with the power itself.

A power to sell real estate in a will, fails when its objects are unattainable.

Where one directs his executors to sell land, *it seems* this is a naked authority, not coupled with an interest. There is no estate vested in the executors as such ; and on the death of one executor, the power would not survive at common law. (*Opinion of the supreme court, not considered on error.*)

*It seems*, that the 11th sec. of the act concerning wills, (1 R. L. 366) merely provides for the case of an executor who refuses to act ; but where executors are directed to sell the land, thus having a naked authority, if one die, though he never qualified as executor, the power is gone. (*id.*)

*It seems*, that where land is devised to executors to be sold, the survivor or survivors might sell at common law. (*id.*)

ERROR from the Supreme Court upon a special verdict. The action in the Court below was brought by *Tillou* against *Sharpsteen*, upon covenants of seisin contained in two deeds

in fee, from *Sharpsteen* and his wife to *Tillou*, for two sever-
al parcels of land in the town of *Washington*, *Dutchess* coun-
ty, dated *March* 16th, 1819. The cause was tried at the
*Dutchess* circuit, where the jury found a special verdict ;
that after the deeds were executed, the plaintiff below, on
or about the 1st of *April*, 1819, entered upon and occupied
the premises for a short time ; that *Moses Hallock* deceased,
was, at the time of his death, seised in fee of the premises in
question ; that he died in 1803, leaving a widow and sever-
al children his heirs at law, having made his last will ; that
*Phebe Hallock*, who was the only witness sworn on the trial
to establish the will, swore that herself, *Edward Hallock* and
*John Allen*, were subscribing witnesses to the will ; that *Ed-
ward* was the son of *Moses Hallock* the testator, and *Edward*
is now deceased ; that *Phebe*, the witness, was his wife, and
now his widow ; that *John Allen* is infirm and unable to at-
tend Court, and is unfit to give testimony from loss of mind ;
that the will was duly executed by *Moses*, the testator, and
witnessed by the above named witnesses, in presence of
each other and the testator ; that, by this will, the testator
directed his executors to pay his debts, &c. gave to his wife,
if she outlived him, the best room in his house, two cows,
her choice of one of his horses, all his household furniture,
she to have a good comfortable maintenance out of the in-
come of his real estate as long as she remained his widow ;
then, after several legacies, he gave to his two sons *Edward*
and *Isaac M.* the use and improvement of all his real estate,
except their mother's maintenance, during her natural life ;
and directed that, after her decease, all his real estate should
be sold ; and gave to his two sons *Edward* and *Isaac M.*
£150 a piece ; and, then, his will was that his five sons,
*Isaiah*, *Peter*, *Obadiah*, *Edward* and *Isaac M.* have all the
rest of his estate, of all kinds, not before disposed of, to be
equally divided between them. He then appointed *Phineas
Lounsberry*, *Samuel Doughty*, and his son *Isaac M.* his ex-
ecutors for the purposes in his will mentioned ; that *Dough-
ty* and *Lounsberry*, two only of the executors, ever proved
or took on them the execution of the will ; they did this, on
the 3d *September*, 1803 ; that the testator, at his death, left

a widow, *Bridget Hallock*, and 5 sons, before named, and 6 grand children, the children of his deceased daughter *Miriam*; that *Obadiah* died in the year 1810, leaving 4 children who are yet alive; that *Isaiah* and *Peter* are now living; that *Edward* died in 1810, leaving *Phebe* his widow, and 3 children, 2 of whom are living, and 1 dead; that *Isaac M.* died in *June*, 1817, without issue, was never married, nor did he leave any last will or testament; that *Bridget*, the widow of *Moses Hallock*, died in the spring of 1818; that the children of *Miriam* are living; that *Lounsberry* and *Doughty*, as acting executors of the will of *Moses Hallock*, executed a deed for the premises in question to the defendant below, *William Sharpsteen*, dated the 29*th August*, 1818; that *Isaiah Hallock* and *Peter Hallock* also executed their deed to the defendant below, *William Sharpsteen*, for the premises in question, dated the 21*st* day of *May*, 1818; but whether, &c. and if, &c. the jury assessed the damages at $3578,56, being ¾ of the consideration money in the deeds to the plaintiff below, with interest.

On this verdict the Supreme Court gave judgment for the plaintiff below, with $225,54 costs, making with the damages $3803,80, in *January* term, 1823, for which they gave their reasons as follows:

### *Reasons for the judgment in the Court below.*

The intention of the testator, in directing a sale, seems to have been, among other things, to provide for *Edward* and *Isaac*, by securing to them £150 each, out of the avails of the farm, in the first instance; and then an equal share with the other sons. This cannot be carried into effect, because *Edward* and his wife being witnesses, the devise to him is void. (1 *R. L.* 367. 4 *John. Rep.* 311. 1 *John. Cas.* 163.) Thus one object in view, when the power to sell was created, cannot be attained. *Isaac* also died before his mother. As to him the £150 are lapsed; for it was a personal devise to him solely. If the sale by the executors is held valid, they cannot make distribution according to the will.

The subsequent events are such, that had they been foreseen by the testator, a sale would not have been directed. In construction of these powers, the intent is much regarded,

ALBANY,
April, 1824.

Sharpsteen
v.
Tillou.

If the object in creating the power ceases, the lands descend to the heirs at law. (6 *John.* 73.) On this ground, we think the sale by the executors cannot be supported.

On another ground, the sale is void. This is a naked authority to sell, not coupled with an interest. There is no previous estate created and vested in the executors as such. On the death of one executor, the power at common law would not survive. (*Bergen & others* v. *Bennet,* 1 *Caines' Cas. in Err.* 16.)

The 11th section of the statute concerning wills, (1 *R. L.* 366) provides for the case when part of the executors refuse to act, and makes valid all sales made by executors who take charge of the administration of the will. It leaves untouched the case of one of the executors dying before the sale. The statute recognizes the distinction between lands devised to executors, to be sold, and a devise directing them to sell the lands. In the former case, no statute provision was necessary to sanction a sale by surviving executors. In the latter, the legislature left the power, in the event of the death of one of the executors, to the operation of the common law. But whether the power was with or without an interest, all the executors must join, if living. The statute was passed to provide a remedy in case of refusal to act.

The defendant, however, having a sufficient conveyance from two of the sons of *Moses Hallock,* the plaintiff is entitled to recover three-fifths of the consideration money, only, and interest.

*J. Tallmadge,* for the plaintiff in error, contended, that the judgment in the Court below should be reversed, for the following reasons :

1. Because the power to sell contained in the will was sufficient, and well executed by the two surviving executors; and their deed was effectual to pass the entire estate :

2. Because, if the power to sell was insufficient, or not well executed, yet the will was not void, but contained a good devise in fee, and the deed from *Peter* and *Isaiah Hallock,* the two surviving sons, conveyed a greater interest in the premises than two-fifths, as declared in the judgment of the Court.

ALBANY,
April, 1824.

Sharpsteen
v.
Tillou.

He said, the judgment was erroneous, both in fact and law. If, as the Supreme Court assume, the power was void, then the judgment was for too much, provided the will is to operate for any purpose. The Court say, the devise to *Isaac M.* lapsed in consequence of his dying before the mother. If so, it descended to the other children of the testator, the grantors, *Isaiah* and *Peter* taking each one fifth of that share, which also passed by the deed, and should have been deducted from the verdict. The Court disregard the several lapses, which happened by the death of the several heirs, 3 of whom died in the life time of their mother. *Edward* and his wife witnessing the will, the devise to them being therefore void, this descended, in equal shares, to all. The interest of *Isaiah* and *Peter*, being two fifths also, in this share, passed by their deed. But taking the principles assumed by the Court below, and allowing the will to be void, still they have given judgment for too much, by one-fifth of *Isaac M.'s* share, who died without issue.

But the principles assumed in relation to this will, by the Court below, were not correct. The testator professes to dispose of all his estate, real and personal. After bequeathing several legacies, and making several devises, he disposes of all the residue of his personal estate to his 5 sons, and provides for the sale of his real estate, and the distribution of the avails. Two of his sons were to have £150 each, and the 5 to take the residue. Now suppose the power to sell was void, or incapable of execution, the whole passed to the 5 sons under the residuary clause. Though a power to sell be inoperative, there is nothing to prevent a residuary clause, embracing the fee, taking full effect. The Court had no right to pronounce the will void *in toto*, because a part of it failed. Then *Isaiah* and *Peter* took two-fifths under this clause ; and, by the death of *Isaac* without issue, they took two-fifths of his share which passed by the deed. This makes the judgment erroneous for so much.

But the Court erred in saying that the power became void. They go on the ground, that where a power is given by the will to sell, and the object fails, the power goes with it ; and they maintain and illustrate the position, by the case of

a power to sell for the maintenance of a widow, who dies before the sale. (*Jackson* v. *Jansen*, 6 *John. Rep.* 73.) This is a very different case. Where a beneficial interest in the sale is given to several, because one dies, it does not follow that the power ceases as to all. If the object totally fails, the power fails also. Not so as to a partial failure ; and the power shall be executed for the residue. Here the object still remains as to two of the devisees, who are living.

The Court say, that in the construction of these powers the intent is to be regarded. This is admitted in its fullest extent, and is, undoubtedly, applicable to the whole will. Here was a clear intent not to die intestate. The Court will almost disregard and break down the words of a power and a will, providing for a sale of lands, in order to effecuate this intent. (*Jackson* v. *Given*, 16 *John. Rep.* 167.) No intendment should be received, to defeat the intent not to die intestate, so plainly manifest upon this will. Yet the Court below have totally disregarded it. *Miriam's* children are let in, to share in the descent, though the ancestor expressly excluded them.

As to the number of executors necessary to execute the power—if this power be annexed to the office of executor, all the authorities agree that it may be executed by those only who take the trust. This will does annex the power to the office. The testator directs the payment of his debts, and, without saying by whom, the sale of his real estate. He then appoints his executors, in terms, *for the purposes mentioned in the will*. All the authorities agree, that where no one is designated to sell, the executors, as such, are to do it. It belongs to them *virtute officii*. It is only where persons are specifically designated as a kind of attorneys for the purposes of the sale, that the strict doctrine advanced by the Court below prevails. I contend, therefore, that the power was well executed by the survivors. (*Osgood* v. *Franklin*, 2 *John. Ch. Rep.* 1, 20, 21. 14 *John. Rep.* 527, S. C. on appeal. id. 553, S. C. *Jackson* v. *Ferriss*, 15 *id.* 346. *Jackson* v. *Jansen*, 6 *id.* 73.) All the authorities are referred to in these cases. *Davoue* v. *Fanning*, (2 *John. Ch. Rep.* 254) *Blatch* v. *Wilder*, (1 *Atk.* 420) and *Sugden on*

ALBANY,
April, 1824.

Sharpsteen
v.
Tillou.

*Powers*, 167, &c. are direct authorities to show that executors are the proper persons to sell lands not expressly directed to be sold by others, especially where the avails are intended to pay legacies. Here the avails were to be distributed among the children—a disposition in the nature of a legacy. In *Lessee of Zebach* v. *Smith*, (3 *Bin. Rep.* 69) the will ordered thus : " The executors, namely, *A. B.* and *C.* shall be empowered to sell my land, &c. and to give a good right." Two of the executors refused to act, and one only sold. The Court held this well, and said that one might sell alone in all cases where the power is annexed to the office of executor: (*id.* 73.)

The Court say, that the 1 *R. L.* 366, *s.* 11, provides for the case when part of the executors refuse to act, leaving untouched this case, where one of the executors dies before the sale. In *Davoue* v. *Fanning*, (2 *John. Ch. Rep.* 254) the Chancellor said, " If all the executors named had the power by the will, then the sole acting executor has the power by the statute, (1 *R. L.* 366) on the neglect or refusal of the rest of the executors to act." The statute declares, expressly, that if part refuse to act, all the power to sell shall devolve on those who qualify and take the trust ; and the Court say, that the power is gone notwithstanding, if he who stands out die before it is fully consummated. This we deny. The full power passes instantly to those who take the trust ; and no subsequent events can defeat this effect. The executor refusing is considered as having never existed; and this reasoning will be found strengthened, by comparing the statute, as it first passed, (1 *Jones & Varick*, 153) with the subsequent revisions. The survivor is expressly declared, by the old act, to possess the power ; and, without this, the evil of the old law is not fully remedied.

*G. Bloom*, for the defendant in error, contended, 1. That the two surviving executors had not power to sell at the time of the conveyance to *Sharpsteen*: 2. That the judgment of the Supreme Court was correct, as to the rule of damages adopted by them.

He said the power did not survive to the two executors. It became a naked power by the death of one, the survivors being strangers to the family, and having no interest in the subject. It does not appear that there were any debts to pay, or other charges against the estate. There were no practicable objects to be attained by the sale, after the widow's death. This will *directs* the *executors* to sell. There is no unqualified command to do this. All the authorities agree, that a power conferred by such language is a naked one. " If a man, by his will, direct his executors to sell his land, this is but a bare authority to sell, without interest; for the land, in the mean time, descends to the heir at law, who, until the sale, would, at common law, be entitled to the profits—and being but a naked authority, if one of the executors die, the power, at the common law, would not survive." (*Bergen* v. *Bennet*, 1 *Caines' Cas. in Err.* 16. *Pow. on Dev.* 291 to 310. 3 *Salk.* 277. *Co. Litt.* 113, *a. id.* 181, *c. id.* 236.) It is a general rule, that a power not coupled with an interest is a naked power. A power simply collateral, and without interest, or a naked power, is when, to a mere stranger, authority is given to dispose of an interest in which he has no estate whatever. (*Pow. on Powers*, 8, 10, 12. *Butler's note*, 298, *to Co. Litt.* 342, *b. Edwards* v. *Sleater, Hardr.* 415, 416.) In all the cases cited against the position for which I contend, there was a power coupled with an interest, or a trust committed, capable of execution at the time.

It is agreed that the intention is much regarded in the construction of these powers. What was the testator's intention in the instance before us ? First, to provide for the widow, by leaving her in charge of *Edward* and *Isaac* his sons : secondly, to provide for them, by giving each, on a sale of the estate, $375. The latter object could never be accomplished by the sale. *Edward* and his wife being witnesses, the devise to them was void, (1 *R. L.* 367, *s.* 12 ; *Jackson* v. *Denniston*, 4 *John. Rep.* 311 ; *Same* v. *Woods*, 1 *John. Cas.* 163) and *Isaac* died before his mother, without heirs, and without a will. Of course, his share lapsed, and diffused itself among all the brothers and sisters. (*Toll. L. E.* 171, 2, 3, 305, 304.) Indeed, whether it lapsed or vested,

can make no difference, because it would descend in the same manner, at his death, to his brother's and sister's children. The provision for both, then, failed. The intention of the testator was defeated. Beside, the gift to *Edward* and *Isaac* was personal—not to them and their heirs. The farm was sold for $3000, fifteen years after the testator's death. Taking out $750, would leave only $450 to each of the five sons. *Edward* never took any interest in this, and *Isaac* died before the sale. How the executors could substitute takers of the sale money, so as to fulfil the testator's intention, it is impossible to conceive. Every member of the family would get more or less than the testator intended.

Again : when every material object contemplated by a testator, in framing his will, fails, the will itself must, of consequence, fail, and the property be regulated by the statute of descent and distribution. Could the testator here have foreseen the changes which have occurred in his family, will any one suppose that he would have left such a will?

The Court below were correct in saying that our act, (1 *R. L.* 366) does not apply to a survivorship of executors, but leaves the case as it stood at the common law.

If the Court, however, should think that the power did not survive to *Lounsberry* and *Doughty*, and yet consider the will good, then they will affirm the judgment of the Supreme Court in part, and reverse it in part, exercising a discretion as to the costs. (*Waters* v. *Travis*, 8 *John. Rep.* 566. *Anonymous*, 12 *id.* 340.) The judgment was founded on the supposition that the will is void, and that *Peter* and *Isaiah* conveyed only two-fifths of the farm ; whereas, if the will be good, they were entitled to two-fifths of the whole, and also two-fifths of *Edward's* and two-fifths of *Isaac's* lapsed shares. This would lessen the amount of the judgment some, but not to any considerable amount.

THE CHANCELLOR. The objects which the testator seems to have contemplated, in directing that his real estate should be sold after the decease of his widow, have been, to a great extent, defeated by himself, by rules of law, and by events which occurred after his death. His son Edward being a

ALBANY,
April, 1824.

Sharpsteen
v.
Tillou.

The objects
of the testator
have been, to
a great extent,
defeated ;

witness to the will, could take nothing under it; and all the beneficial intentions of the testator towards this son, are ineffectual. If the bequest of one hundred and fifty pounds to his son Isaac M., is considered as payable from the product of the real estate when sold, and such is the sense of the will, this contingent legacy fails; Isaac M. having died, before the power to sell, was, or could be exerted. The intended dispositions of the money which should arise from the sale of the real estate, are, to a great extent, impossible;

*And the intentions of the testator, in giving the power, frustrated.*

*The purposes of a testator, in giving a power by his will, must be ascertained from all the provisions of the will; and the objects of the power must be considered in connexion with the power itself.*

and in these circumstances, the intentions of the testator in giving the power, are frustrated. This power to sell, can not be disjoined from the other provisions of the will; the purposes of the testator in giving the power, as in other respects, must be ascertained from all the provisions of the instrument; and the objects of the power, must be considered in connexion with the power itself. In the case of Jackson v. Jansen, 6 John. 73, the supreme court held, that where the object of a testator in giving a power to sell, had ceased, the power itself, also ceased. In this case I am of opinion, that by the total nullity of the will in respect to the portions of the estate intended for Edward, and by the failure of the legacy of two hundred and fifty pounds to Isaac M., the objects of the power had so far failed, that there was not a valid power to sell, in 1818, when a sale

*It fails when its objects are unattainable.*

was made by two of the executors. The power fails, because its objects are unattainable.

*The power to sell having failed, the 5 sons do not take the land as devisees.*

It is urged by the counsel of Sharpsteen, that if the power to sell failed, the five sons of the testator took the land, as devisees. But this seems not to be the sense of that clause of the will, by which the testator gives all the rest of his estate not before disposed of, to his five sons. The testator had before made dispositions of all his real estate; and his intention concerning the residue, must be understood to exclude his land. He had indeed, previously disposed of all his moveable estate; but whether the terms, moveable estate, were used by him, to comprehend all his personal estate, or in some sense more restricted, is uncertain. The testator in making the final bequest of the residue of all his estate, seems to

have supposed that his land would be sold, and might produce a sum greater than would be sufficient to discharge the legacies; and upon that supposition, he probably meant to dispose of such an excess. But his intentions declared by this will, are to a great extent null; and the last disposing clause of the will, seems not to be a devise in fee of his land.

The land of Moses Hallock, not being devised in fee, and being subject only to the temporary charges made in the will, descended by his death, to his heirs at law. His heirs were five sons, and six children of a deceased daughter. Each of his five sons, therefore took a sixth part; and the children of his deceased daughter, took another sixth part of his land.

Isaac M. Hallock died in 1817, intestate, and without issue. His heirs were his brothers Isaiah and Peter, the children of his deceased sister, those of his deceased brother Edward, and those of his deceased brother Obadiah. The share of Isaac M. in the land of his father, thus descended in five portions; Isaiah and Peter each taking a fifth part of that share.

Isaiah and Peter, as heirs of their father, each took a sixth part, and as heirs of their brother Isaac M., each of them took a fifth part of his sixth part of the land. These fractions added, and more simply expressed, are two fifths of the whole; and the result of all these descents gave to Isaiah and Peter, the same proportion of the whole, which they would have taken, had the land descended by the death of Moses Hallock, in five shares, instead of six. Isaiah and Peter were thus, severally, owners of one fifth part of the land, on the twenty first day of May 1818, when they conveyed all their title to Sharpsteen; and he then acquired a title to two fifths of the land in question.

The conveyance from the executors being void, for want of a sufficient power; the conveyance from Isaiah and Peter being valid, to the extent of their rights, and their rights embracing two fifths of the subject; the title conveyed by Sharpsteen to Tillou, has failed, in respect to three fifth

*Margin notes:*

ALBANY,
April, 1824.

Sharpsteen
v.
Tillou.

The power becoming null, and the land not being devised, it descended to the heirs at law.

Judgment below was properly for 3-5 of the consideration.

Process by which this result was reached.

ALBANY,
April, 1824.

Bank of Utica
v.
Smedes.

Judgment affirmed unanimously.

parts of the land. I am accordingly of opinion, that there is no error, in the decision of the supreme court.

The Court being unanimously of this opinion, it was, thereupon ORDERED, ADJUDGED and DECREED, that the plaintiff take nothing by his writ ; and that the defendant go thereof without day. And it was further ORDERED, ADJUDGED and DECREED, that the defendant recover against the plaintiff his costs to be taxed, in defending the writ of error in this cause ; and that the record be remitted, &c.