WILLIAM GOURLEY, Administrator, etc., Respondent, *v.* JOSEPH
          CAMPBELL et al., Appellants.

The will of H. directed his executors to close his business and place the
    proceeds thereof and all his "property, both real and personal, at inter-
    est on bond and mortgage, or otherwise, as in their judgment they may
    deem best," and to employ "the proceeds, *rents,* income or interest" for
    the support and maintenance of the testator's wife and children; he then
    devised and bequeathed all his estate, "both real and personal," to his
    children, to be divided upon the death of his wife. In an action for a
    construction of the will, *held,* that an intent to convert absolutely the
    real estate into money did not appear, and no such conversion was
    made by the will.

It appeared that the personal estate of the testator was amply sufficient to
    provide for the support and maintenance of the testator's widow and
    children. The real estate was not disposed of by the executors. *Held,*
    that as no necessity existed for a sale of the realty for the purpose speci-
    fied in the will, to this extent the purpose had failed; and that the land
    retained its original character and descended to the heirs.

*Gourley* v. *Campbell* (6 Hun, 218) reversed.


(Argued April 6, 1876; decided May 23, 1876.)


APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department affirming a judgment in
favor of plaintiff, entered upon a decision of the court on trial
at Special Term. (Reported below, 6 Hun, 218.)

This was an action to obtain a construction of the will of
James Hays, of Newburgh, N. Y., and for the appointment
of a trustee to carry out the provisions of the will. The
material clauses of the will in question are as follows:

"In the first place, I will and determine that my executors,
hereinafter named, shall collect all sum and sums of money
due to me from any person or persons whatsoever.

"That they shall close my store and other business and
concerns, and settle the same; that from the proceeds thereof
they shall liquidate and pay all debts, dues and demands
owing by me to any person or persons whatsoever.

"In the second place, my executors, to be hereinafter named, shall place the proceeds thereof, and all my property, both real and personal, at interest on bond and mortgage, or otherwise, as in their judgment they may deem best, and the proceeds, rent, income or interest, shall be employed and used for the support and maintenance of my beloved wife Elizabeth and my children William, Mary and James, and for the education of my said children.

*Item :* I hereby will and determine and authorize my said executors when, and as soon as my said children shall respectively come to and arrive at the period of lawful age for the transaction of business, to give to each of them not exceeding one thousand dollars to commence business for themselves, or at the time of their marriage, provided they marry with the consent of their mother, if she should then be living.

" *Item :* I will, devise and bequeath unto my said children, William and Mary and James, all my estate, both real and personal, of all kinds whatsoever, to be equally divided between them, share and share alike, upon the event of the death of their mother, my said wife, Elizabeth. I hereby nominate, constitute and appoint my well beloved friends Isaac Stevenson, grocer, John Thompson, blacksmith, and Archibald Hays, grocer, to be my executors for the purposes above named, hereby entrusting them with the management and control of all my concerns and estate, to manage and employ them for the benefit and behoof of my wife and children."

The testator died in 1828, leaving his widow and the three children referred to in the will him surviving. The three children all died intestate and unmarried prior to the death of the widow. The executors named in the will all died prior to 1868. The widow died intestate in July, 1870. No part of the real estate left by the testator was ever sold by the executors. The personal estate was ample for the support of his widow and children, and there remained thereof at the death of the widow over $9,000. The plaintiff, who is next of kin to Mrs. Hays, was appointed administrator with the will annexed. The defendants are the heirs of the testator.

The plaintiff claimed, and the court below found, that the testator intended by the will to convert his real estate into personalty, and in equity such conversion was made. That upon the death of the testator all his estate vested in his children as personal property, subject to the maintenance of their mother, and upon the death of the last surviving child it vested in the mother as personal property, and the appointment of a trustee was directed to sell the real estate. To all of which findings defendants' counsel duly excepted.

*Robt. Johnstone* for the appellants. The particular purpose for which a conversion of the real estate was ordered by the will having failed, it retained its original character and descended to the heirs. (*Chitty* v. *Parker*, 2 Ves. Jr., 271; *Robinson* v. *Taylor*, 2 Bro. C. C., 589; *Hawley* v. *James*, 5 Paige, 447; *Smith* v. *Claxton*, 4 Mad. Ch.) A subsequent sale would vest no title even in a *bona fide* purchaser. (*Jackson* v. *Jansen*, 6 J. R., 73; *Sharpstein* v. *Tillou*, 3 Cow., 671; *Slocum* v. *Slocum*, 4 Edw. Ch., 613; *Randall* v. *Rookey Prec. Ch.*, 162, *Jessop* v. *Watson*, 1 Myl. & K., 665.)

*C. F. Brown* for the respondent. The will created a valid express trust in the executors. (2 Story's Eq., § 972; *Day* v. *Roth*, 18 N. Y., 448; *Malin* v. *Malin*, 1 Wend., 625; *Tracy* v. *Tracy*, 3 Bradf., 57.) A power in trustees to sell need not be given by express words, but may be implied from the terms of the will and the apparent intent of the testator. (Gerard's Titles to R. E., 442; *Morton* v. *Morton*, 8 Barb., 18; *Conover* v. *Hoffman*, 1 Bosw., 217; *Meaking* v. *Cromwell*, 5 N. Y., 136; 2 Sandf., 514; 3 Redf. on Wills, 131, 138; *Hamilton* v. *Buckmaster*, L. R., 3 Eq., 323; *Bogert* v. *Hertell*, 4 Hill, 492; *Livingston* v. *Murray*, 39 How., 105.) There was an equitable conversion of the real estate. (Adams' Eq., 286, 289; 3 Redf. on Wills, 140; 1 Roper on Legacies, 340, 358; *Stagg* v. *Jackson*, 1 Comst., 206; *Marsh* v. *Wheeler*, 2 Edw. Ch., 157; *Bramball* v. *Ferris*, 14 N. Y., 46; *Bunce* v. *Vander Grift*, 8 Paige, 37; *Dodge* v. *Pond*, 23 N. Y., 69.)

MILLER, J. The main question to be determined upon this appeal is, whether the testator intended an absolute conversion of his real estate into money, or what is called in law a conversion out and out, and a distribution of the same as personal property among the devisees named in the will. There are no explicit directions in the will which show clearly such an intention, and if it is to be considered as existing it must be derived from the construction to be placed upon certain provisions of the will under the rules of law applicable to such cases. While it is evident that the testator intended to provide for the support and maintenance of his wife and children, and the education of the latter, it is not clear, by any means, that he designed a conversion of his real estate into money, and a final distribution of the same as personal property. There are many features of the case which are utterly at war with such a theory, and it is not apparent that such a design actually existed. The clause which provides, that " my executors shall place the proceeds thereof, and all my property, both real and personal, at interest on bond and mortgage, or otherwise, as in their judgment they may deem best," is followed by a direction that the "proceeds, rent, income or interest shall be employed " for the support and maintenance of the testator's wife and children, and the education of said children. The use of the word " rent," in connection with the other terms employed, indicates that the testator expected and intended that a portion of his estate should remain or be invested in real estate, and that an investment in land would be within the meaning of the will. So, also, while the words " or otherwise " may be construed to refer to the mode of investment, they are also susceptible of another interpretation, and it may well be urged that they relate to the discretion of the executors to sell or not, according to their best judgment.

Independent of the difficulties referred to, an insuperable obstacle to a construction which converts the whole real estate into money, is the concluding portion of the will, by which the testator devises and bequeaths to his children by name all his " estate, both real and personal, of all kinds whatsoever, to be

equally divided between them, share and share alike, upon the event of the death of their mother." If the testator had designed that all his estate should be converted into money he would not have made a disposition of his real estate or of all kinds of property. These were his last words, and the last clause of a will is to be deemed an indication of his ultimate intention, unless it is plain from the entire will that a different intention existed, which is not apparent from the prior provisions of the will in question.

The authorities cited to sustain a contrary construction from the one stated present entirely different characteristics from the case now considered. Even if it may be considered that the clause of the will in which the testator uses the words "real estate" in the devise to his children contains no words of inheritance as the law stood when it was executed, yet the terms employed are too strong to resist the inference that the testator never intended that the real estate should be converted into money without any qualification whatever. The construction placed upon the testator's will leads to the conclusion that he made no such disposition of his real estate as to constitute an out and out conversion of the same into money.

The authorities fully sustain this position. In *White* v. *Howard* (46 N. Y., 162) Judge GROVER said : "To constitute a conversion of real estate into personal property, in the absence of an actual sale, it must be made the duty of the executors to sell in any event. A mere discretionary power to sell produces no such result." In *Wright* v. *Trustees of Methodist Church* (1 Hoff. Ch. R., 218) the vice-chancellor held, that if the disposition is made to depend upon the discretion of the trustee of the power the will is not imperative and does not convert the estate. There is no express direction in the will to sell, and it is only by implication that the power to sell can be upheld ; and, if it did exist at all, it was qualified to the exercise of their best judgment, both as to sale and the nature of the investment of the proceeds thereof. These provisions are, at least, too indefinite and

uncertain to authorize the conclusion that the executors were bound to sell in any event.

In fact, the purpose of the testator was to provide for the support and education of his children and maintenance of his wife. The personal estate was ample for that purpose, and no necessity existed for a sale of the real estate; to this extent, therefore, the purpose has failed. The rule in equity is well settled that when a conversion of real into personal estate is ordered for particular purposes, and those purposes fail, the land retains its original character and descends to the heirs. In *Chitty* v. *Parker* (2 Ves., Jr., 271) the testatrix directed her real estate to be sold and all her estate to be converted into money for the purposes of her will. The will was satisfied without touching her real estate, and it was held that there was no equity for the next of kin against the heir, and that the heir takes all that which is not for a defined and specific purpose given by the will. The direction to sell was peremptory, which is not the case here; but, in both cases, the purpose has failed and the devise has been satisfied. (See, also, *Slocum* v. *Slocum*, 4 Ed. Ch., 613; *Jackson* v. *Jansen*, 6 J. R., 73; *Sharpsteen* v. *Tillou*, 3 Cow., 651; *Hawley* v. *James*, 5 Paige, 447; *Robinson* v. *Taylor*, 2 Brown's Ch. Cas., 595.) It cannot be claimed that these cases are inapplicable, as the purpose of the conversion was to enable the executors to sell, if they deemed it best, and it was necessary to support and educate the family of the testator; all of these have been fully answered without any sale, and hence the land has not been converted and descends to the heirs at law. There are other views which tend in the same direction and lead to the same conclusion. As, however, those already presented are sufficient to uphold the construction put upon the testator's will, it is not necessary to discuss them.

We have been referred to numerous cases which sustain the principle that, when the intent is manifest to convert into money, the whole estate is to be regarded as personal from the testator's death; but all of them are decisions where a sale

Statement of case.

was ordered for the purposes of a division. Where the devisees were living, the division could not be made without a sale, and the intention was entirely clear ; they are not, therefore, in point, and do not affect the question presented in the case at bar.

As it is manifest that the court below were in error, the judgment must be reversed, and as a question of law only arises which cannot be altered upon a new trial, judgment should be ordered for the defendants.

This is also a case where costs are in the discretion of the court, and the questions involved being difficult and intricate, we think the costs should be paid out of the property.*

All concur. Folger, J., absent.

Judgment reversed and judgment for defendants.

* The judgment was subsequently corrected as to costs by making it without costs as to either party against the other.