Bradley, J.
The testator, James Faulkner, died seized of a considerable quantity of real property, some of which he specifically devised ; and the rest of it came within the residuary clause of his will by which he gave to his heirs and next of kin the residue of his estate to be divided between and paid to them in cash in five years from his decease, and gave to the executors power to sell and convert into money the property and make the distribution there directed. In' July and August, 1887, James Faulkner, Jr., mortgaged to John Hyland lands specifically devised to him by the testator and situated in the county of Livingston to secure the payment in the aggregate of $40,000. This was done by three mortgages; and by another made in August, 1887, he mortgaged his title and interest as residuary devisee and legatee in the lands covered by that clause to John Hyland to secure the payment of the further sum of $20,000. These mortgages were soon after their dates recorded in the clerk’s office of Livingston county. They were assigned to George Hyland and the assignments recorded in April, 1888. He was not named in the petition and for that reason as well as others it is urged by his counsel that the surrogate acquired and had no juris-diction to entertain the proceeding or to make the decree which was made. It is true, as claimed, that the proceeding is dependent upon the statute for its support, and substantial compliance with it is essential to jurisdiction. This proceeding was not commenced within three years after letters testamentary were first issued to the executor of the will of the testator. This is the time within which it is provided that a creditor of a decedent may. present his petition to the surrogate’s court praying for a decree directing the disposition of the decedent’s real property for the payment of his debts. Code Civ. Pro., § 2750. But the time during which an action is pending in a court of record between a creditor and an executor or administrator of the estate, is not a part of the time so limited “ for presenting a petition founded upon a debt, which is in controversy in the action ; if the creditor •has before the expiration of the time so limited, filed, in the clerk’s office of the county where the real property is situated, a notice of pendency of the action specifying the names of the parties, the object of the action * * * containing a description of the property in that county to be affected thereby; and stating that it will be held as security for any judgment obtained in the action.” Id., § 2751.
It appears by the petition that before the expiration of three years from the time letters were issued to James Faulkner, Jr., and until the time of the presentation of the petition, an action brought by the petitioner as receiver of the First National Bank of Dansville, as creditor, against the executor of the will of the testator was pending, and that before the expiration of such three years, the plaintiff duly filed a notice of pendency of the action, etc. The petition did not state that it was “founded upon a debt, which was in controversy in the action ; ” and for that reason it is urged that the surrogate took no jurisdiction by it to proceed in the matter. While it is essential that the petition be founded *768 upon such debt to relieve the proceeding from the limiting provision of § 2750, the statute does not in terms require that the fact should appear in the petition; but does provide what it shall set forth. Section 2752.
It would, therefore, seem that such requirement was effectually suppliable by proof; And the fact that the lis pendens was filed, etc., in compliance with the statute was proved. It appeared that the debt upon which the petition was founded, was the subject-matter of the action, but there was no evidence other than the inference derivable from the fact that the action had been brought and was pending, that the cause of action alleged was contested. );The action had been pending about six months at the time of filing the petition; and in view of its commencement and such pendency, the reasonable presumption is that the claim made by the receiver was disputed, and that the alleged debt was in controversy in the action. This question was not raised on the hearing,, nor is it distinctly presented by any exception.
It is contended in behalf of George Hyland that the surrogate acquired no jurisdiction as against him because he was not named in the petition. The statute upon the subject provides that the petition must set forth “ as nearly as the petitioner can, upon diligent inquiry ascertain them,” the names of all the heirs and devisees of the decedent, and also of every other person claiming under them or either of them. Id., § 2752. And that a decree can be made, only where it is established to the satisfaction of the surrogate, that the proceedings have been in conformity to the statute. Id., § 2759.
Neither was he named in the citation issued upon the filing of the petition. The proceedings progressed, and thus far he could not have been prejudiced by them. But afterwards an affidavit of theft,petitioner' to the effect that certain other persons named, not including Hyland, had or claimed to have a claim or lien on or interest in the premises described in the petition, was filed with the surrogate, who then issued citations to such persons and George Hyland, citing them, to appear and show cause why a decree should not be made directing the disposition of the property of testator for the payment of his debts. This citation was served upon Hyland, and he appeared and filed his answer, setting forth as well objections to the jurisdiction of the surrogate as matters upon the merits of the petition. Thereupon the petitioner and the other creditors before mentioned repeated the introduction of the evidence before given; and after the close of the proofs Hyland submitted propositions to the surrogate with request to find them, and excepted to findings of fact and conclusions of law as found by him. As presented by the record there was an irregularity in not having any proof and order upon which to found the citation issued to Hyland and in not so amending the petition as in that manner to make him a party to it, yet by his appearance generally and taking part in the proceeding he became a party to it, and assuming that the surrogate had jurisdiction of it, the power as against Hyland to make decree was as effectual as if he had originally been made a party. While ap *769 pearance or consent cannot confer upon a tribunal jurisdiction of subject matter not within it, the rule is otherwise as to the jurisdiction of the person. In the present case not only the subject matter was within the jurisdiction of the surrogate, but the petition contained the elements essential to its support, although farther facts were necessary to the maintenance of the proceeding, and so far as they existed were available for such purpose. Id., § 2474.
The statute provides that the petition must set forth as nearly as the petitioner can, upon diligent inquiry, ascertain, a general description of the decedent’s real property, and interest in real property within the state, id., § 2752, which may be disposed of in the order prescribed in § 2763. The testator had an interest in what was known as the “ Tolies House,’’ which was not mentioned in the petition, but it is conceded that the petitioner may have been excused for that omission as it may not have been ascertained upon diligent enquiry by him. But the testator was seized of a farm situated in the county of Steuben. This was described in the petition, and not included in lis pendens, and for that reason it cannot be disposed of for the payment of the debts of the testator by direction of any decree of the surrogate, since three years from the time of issuing the letters testamentary have expired, and had at the time of filing the petition. This real property was the subject of specific devise by the will, and the surrogate found that the failure by lis pendens to subject that land to this proceeding was not excused on the ground that it could not by diligent enquiry have been ascertained by the petitioner. While that omission does not go to the jurisdiction of the surrogate, it does, to some extent, prejudice Hyland because that land is not covered by his mortgages, and description of the property which they did cover was embraced in the lis pendens filed. Nor did Hyland have any opportunity within the three years to cause or suggest that the Steuben land be charged by this proceeding. The statute contemplates that all the lands of a decedent ascertainable by diligent enquiry of the petitioner shall be subjected to a proceeding having the purpose of this one, although in a proper case for it a portion of the premises may be released from the lien. Id., § 2751. From this mistake of the petitioning creditor, and as against him, Hyland should have been relieved by direction that the specifically devised real property described in the lis pen-dens be mortgaged for only the same proportionate amount of the deficiency appearing on the sale of the residuary lands, with which it would have been charged if the Steuben land had not been omitted. That land was valued at $2,162.50.
The surrogate found that there came into the hands of James Faulkner as executor of the will a large amount of personal property which could have been applied to the payment of the debts of the decedent, and which was not so applied, but was converted to his own use and squandered by such executor, and that “ the total value of the personal property does not exceed $5,000.” It does not appear what was the amount of such property left by the tes *770 tator, but it is urged that the amount of it, whatever it was, must be applied before his real estate can lawfully be appropriated to the payment of his debts, and that the conversion and waste of it by an irresponsible executor does not qualify the proposition, and for its support reference is made to the statute which provides that a decree directing this disposition of real property can be made only where, after due examination, it is established to the satisfaction' of the surrogate “ that all the personal property of the decedent which could have been applied to the decedent’s debts and funeral expenses has been so applied; or that the executors or administrators have proceeded with reasonable diligence in converting the personal property into money and applying it to the payment of those debts and funeral expenses, and that it is insufficient for the payment of the same, as established by the decree.” Id., § 2759. Although this phraseology differs from that of the former statute, its import is substantially the same. 2 R. S., 102, § 14; Laws 1837, chap. 460, § 41; 4 Edm. Sts., 494. The necessity of treating the personal property of a decedent as the primary fund for the payment of his debts and the application of it to that purpose, so far as it can with reasonable diligence be done, before resorting to his real property, was then and now is the statutory requirement. The personal property of the decedent was insufficient for the payment of his debts. They at the time of filing the petition amounted to upwards of thirty thousand dollars, and his personal estate did not then exceed five thousand dollars, And what is reasonable diligence within the contemplation of the statute is somewhat dependent upon circumstances, which, in this instance, were peculiar.
This proceeding was taken not by the personal representatives of the testator, but by a creditor or the representative of certain creditors and solely in their interest. The debt of the decedent upon which it was founded was developed a short time only, before the expiration of three years after letters testamentary were issued upon his will. Whatever of the personal estate then remained was not in a situation to be applied on the debt, and the inference was permitted that in view of such situation it was not by the exercise of reasonable diligence available for application to that purpose within the time required or up to the time of filing the petition. The acount and judicial settlement of the temporary administrator (who was such intermediate the revocation of the letters to James Faulker, Jr., and the issue of letters to Lester B. Faulkner late in the year 1887), in connection with other evidence on the subject justified the conclusion of the surrogate upon the question now under consideration, that a case was presented authorizing the proceeding upon the petition and a decree therein directing the disposition of the real property for the payment of the debts of the decedent. Moore v. Moore, 14 Barb., 27. And the question whether or not the creditors were chargeable, by way of reduction of the debts of the decedent, with the amount of the personal property left by him and which was appropriated and wasted by the executor, we think was properly disposed of by the surrogate. There was no question of laches in that respect on *771 the part of the creditors presented for consideration. The testator voluntarily selected his personal representatives to take and administer his estate. It may be assumed that the responsibility of the executor was personal' merely, and whatever view may be taken in cases where are appointed administrators who must secure the performance of their duties by the requisite bond, there is no reason for denial of the right of creditors to the payment of their debts out of the proceeds of the real estate of testator whose executor has squandered the personal property which came to his hands as such.
The cases upon the subject to which our attention has been called do not aid the appellant They were those where the application to sell real estate for the payment of debts were made by executors or administrators, or where a creditor seeking such relief was chargeable with extraordinary delay or laches. At the time of the death of Samuel D. Faulkner he was a member of the firm of Sweet, Faulkner & Co., owning certain patents for improvements in mowers and reapers, and engaged in the business of manufacturing. The property was both real and personal, and the interest, in the firm, of Samuel D. Faulkner, who died intestate, was three-eighths. The testator was his sole heir and next of kin; and by his will he gave and devised his interest in the property and business of the firm to James Faulkner, Jr., free from any control of his executor, with direction to receive and pay the net income of such interest to certain persons named, and eventually that distribution of the property or its proceeds be made between persons as directed by the will. The business of the firm was continued, and, so far as appears, it had not ceased to continue at the time this proceeding was instituted, when the three-eighths interest in the assets of the firm had the value of $15,000. And James E. Crisfield having been appointed as such, then was testamentary trustee under that provision of the will. While he insists that such interest in the property of the firm of Sweet, Faulkner & Co. is by the will exonerated from liability for the debts of the testator, until all his other property is exhausted, it is contended by Hyland that such property should be treated as personal property, and be applied before resort is had to the real estate of the decedent for the payment of his debts. The surrogate found that such interest of the testator in the firm assets were “ not liable for the payment of his debts until after all the lands embraced in the residuary clause of his said will, and thereby devised, are first sold and applied.” No exception was taken to this finding by any party other than Crisfield, and the portion of the decree entered in conformity to such finding by which the firm assets belonging to the estate are put on the same footing as the specifically devised lands, is not by his notice of appeal made the subject of review by him. That question, therefore, requires no further consideration.
It is also urged that the surrogate was personally disqualified to entertain the proceedings and make the decree because an action, entitled “ The People of the State of New York exrel. Edwin *772 A. Nash, as Surrogate, etc., v. James Faulkner and Henry Faulkner, Survivors of Samuel D. Faulkner, Deceased," had been brought, tried, and a recovery in it had against the defendants for upwards of $3,000. The claim founded on the judgment was presented in this proceeding in behalf of the People by the attorney against the estate and was rejected by the surrogate as not a lien upon the real property, for the reason that no lis pendens had been filed in the action. The judgment roll was put in evidence, but is not set out in the record. The purpose of the action does not appear. It cannot, therefore, in view of its title, be assumed that the surrogate had any personal interest in it or had any relation to it which would make the question raised for the first time on review available. The rule would be otherwise if the case came within the statute declaratory of the common law that no judge can sit in a cause in which he is a party or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties. 2 R. S., 275, § 2. In such case his disqualification to sit as judge cannot be waived so as to deny the right of a party to cause judgment to be vacated as void. Oakley.v. Aspinwall, 3 N. Y., 547 ; Converse v. McArthur, 17 Barb., 410; Baldwin v. McArthur, id., 414. This proceeding was not founded upon the debt represented by that judgment, nor affected by its existence. And when it was presented, if objection had been taken, the question would have arisen whether the relation of the surrogate to it was such as to disqualify him to adjudicate upon it as an asserted claim against the estate of the decedent. But no question being raised at the hearing and the claim having been rejected, there is now no opportunity to effectually assert that the officer was disqualified to entertain the proceeding to its determination and that the decree is void. That question does not necessarily depend upon the fact whether or not he could lawfully adjudicate in the proceeding upon the claim represented by the judgment. The part which it did have in the proceeding was incidental merely, and now justifies no interruption to the result of its main purpose represented by the decree.
It is now contended that the claim of Christiana Smith was improperly allowed by the decree as a charge upon the real property of the decedent, as it was not the subject of an action, and therefore did not come within the provision of § 2751 of' the Code. ' Her claim was disputed and the matter was referred pursuant to the statute. 2 R. S., 88, § 36, as amended by Laws 1859, chap. 261. It was pending at the time of filing the petition, and judgment was recovered by her upon the report of the referee July 31, 1888. Before the expiration of three years from " the time letters testamentary were issued she caused a lis pendens to be filed. Although the method so provided for the presentation and determination of the controversy arising upon a disputed claim against the estate of a deceased person is a special proceeding, Mowry v. Peet, 88 N. Y, 453, the statute provides that “ the same proceedings shall be had in all respects * * * as if the reference had been in an action in which such court *773 might by law direct a reference, * * * and the judgment of the court thereupon shall be valid and effectual in all respects as if the same had been rendered in a suit commenced by the ordinary process." 2 R. S., 89, § 37. The provision for filing the lis pendens has relation in terms to actions only. And while there may be some doubt whether it can by construction be deemed to embrace such a controversy instituted by the reference provided for, it is quite evident in view of the statute just mentioned that the intent was to give to it the benefit of the practice pertaining to actions so far as practically applicable. In that view it was held in Paddock v. Kirkham, 102 N. Y., 597; 2 N. Y. State Rep., 555, that although the statute provided for issuing a commission to take testimony out of the state, only in case of issue of fact in an action pending in a court of record, it was issuable to take testimony in a controversy in the reference of such disputed claim. The same reason is applicable to the use of lis pendens, which may as in this instance be essential to render recovery effectual as a means for its collection. But this question is presented by no exception, which is necessary for the purpose of its consideration on this review.
Upon the appeals of the petitioner and Crisfield it is in their behalf argued that the testator was the owner of the fifty shares of the capital stock of the bank left by his son Samuel D. Faulkner ; and that the assessment of $5,000 upon such stock, was chargeable against his estate, and should have been included in the amount directed by the decree to be paid with the proceeds of the real estate. This claim is based upon the fact that he was the sole heir and next of kin of his son Samuel, and after his death took it into his possession, voted it with his other stock, and received such dividends as it produced. But his control of it as well as the receipt of dividends was consistent with the fact that he was administrator of the estate of his son. While he duly advertised for claims existing against his intestate, and may have paid such as were presented and undisputed he never made any judicial settlement of his accounts as administrator, nor was the stock of his son transferred to him on the books of the bank. The residuary interest in the stock after payment of the debts of his intestate belonged to him, but while he held the relation of administrator, which he could terminate only through a final judicial settlement of his accounts, it is not seen how he could be treated as having the legal title to the stock other than in his representative capacity. An administrator may, however, after the expiration of the time prescribed by statute for-the presentation of claims of creditors, make distribution of the assets to the next of kin, and not be chargeable to those whose claims were not presented. 2 B. S., 89, § 39 ; Erwin v. Loper, 43 N. Y., 521. This is not applicable to retention by the administrator, who is also the next of kin, and has not been discharged, by and úpon judicial settlement of his accounts, from that relation. But if in this instance he had procured a transfer upon, the bank books of the stock to himself individually a different question may have been *774 presented. There was no error in not treating the assessment upon the fifty shares as the debt of James Faulkner, deceased.
The remaining questions have relation to the nature and effect ef certain provisions of the will and especially as applied to the lands embraced within the residuary clause. The direction to the executors to pay the debts of the testator did not make them a charge upon his real estate. Hamilton v. Smith, 110 N. Y., 159 ; 17 N. Y. State Rep., 146 ; In re Powers, 124 N. Y., 361; 36 N. Y. State Rep., 347. Eor was there an equitable conversion of the real estate within that clause into personalty. The testator there gave the residue of his estate to his “heirs and next of kin in the same portions in which ” it “ would be divided or distributed ” in case of his death intestate, directed it to be distributed and paid in cash in five years from his decease, and for that purpose gave to the executors power of sale.
The language used does not import that the testator intended the real should be treated as personal property, but the contrary is fairly indicated by giving 'the property to his heirs as well as next of kin, to be divided as if no will were made. And it seems that the power of sale was given solely for the purpose of the execution of the provisions of this clause of the will, and that on failure to execute the power the persons in view, capable to do so, would retain as heirs the realty, as such, so given them. Gourley v. Campbell, 66 N. Y., 169; Parker v. Linden, 113 id., 28; 22 N. Y. State Rep., 614; Chamberlain v. Taylor, 105 N. Y., 185; 7 N. Y. State Rep., 517. Eo other question requires consideration.
The judgment of the supreme court and the surrogate’s decree should be so modified that the specifically devised real estate, described in the latter, be mortgaged for no greater portion of the deficiency remaining after the sale of the residuary lands than would have been its proportion if the Steuben farm valued at $2,162.50, had been charged by this proceeding with liability to pay its portion at such valuation, and with such modification the judgment should be affirmed.
All concur.