JOHN PARKER et al., as Executors, etc., Appellants, *v.* MARIA LINDEN, Respondent and MARTHA LYTHGOE et al., Appellants.

L. died leaving a widow and no children.   His will, after a devise of his residuary real estate to three persons named, his next of kin and heirs, who were non-resident aliens, contained a direction that said real estate be sold at auction by a referee appointed by the Supreme Court, the net proceeds to be deposited in court " in the same manner as money belonging to non-residents " for the use and benefit of the devisees " subject to the further order of the court."   In an action for a construction of the will, it appeared that two of the devisees died before the testator; the court found that the gifts to them lapsed, and as to their portions the testator died intestate.   The court also found that the direction for a sale worked an equitable conversion of the real estate into personalty and the portion so undisposed of was to be distributed as such ; that is, to the widow one-half and $2,000 in addition.   *Held,* error; that the direction for a conversion was simply for the purposes of the will, and while as to the non-resident aliens the doctrine of conversion would, if necessary, apply in their favor, if not required for that purpose, a conversion would not be presumed; and, so far as the widow was concerned, the property undisposed of, whether a sale was necessary or not, devolved according to its original character.

One of the parties appellant also appealed separately from the same judgment.   *Held,* that the appeal should be dismissed as unnecessary.

Reported below, 44 Hun, 518.

(Argued February 1, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made May 16, 1887, which affirmed a judgment, entered upon a decision of the court on trial at Special Term.

The action was brought by the executors of James Linden, who died June 20, 1885, leaving no issue, to obtain a judicial construction of his will, a sale of the real estate of which he died seized, a declaration that the share of William Lego lapsed, and for other incidental relief. The will which was executed November 9, 1879, so far as is material to any question presented by either party, is substantially as follows:

*First.* The testator gives to Maria Linden $1.

*Second.* Makes provision for the improvement of his burial place.

*Third.* Declares some small bequests.

The *fourth* clause is in these words: " I give and bequeath to my half-brothers, William Lego and Mark Lego, and my half-sister, Jane Lego, now or late of Liverpool England, all the rest, residue and remainder of my estate, both real and personal, of what nature or kind soever, to be received by them, share and share alike or in equal parts.

" *Fifth.* I order and direct my executors, as soon after my demise as possible, to take possession of my personal estate of whatever name or kind, and not hereinbefore granted or bequeathed, and to sell the same at public vendue, and to take possession of my real estate, and collect the rents thereof, and the surplus money, arising from such rents after paying expenses, and the money arising from the sale of my personal estate, to be deposited by my executors in the Greenwich Bank for Savings, at present located at No. 73 Sixth avenue in the city of New York, to remain in said bank until there shall be money sufficient with any money I may have in said bank, together with any money I may have in any other bank or at any other place, to pay all bequeaths herein given and work ordered to be done, then all the money given or bequeathed to be paid as hereinbefore directed.

" *Sixth.* I order, after all my just debts and bequeaths are fully paid and discharged, that my real estate be sold at public auction, under the direction of a referee appointed by the order

of the Supreme Court; that said referee execute to the purchaser or purchasers a deed of the premises sold; the proceeds of the sale, after deducting his fees and expenses of sale, said referee shall deposit in the Supreme Court to be invested under the direction of said court, in the same manner as money belonging to non-residents according to the rules and practice of the Supreme Court in such cases, for the use and benefit of William, Mark and Jane Lego as before directed, subject to the further order of the court.

" The property situate on the south-easterly corner of Eighth avenue and Thirty-fifth street, I direct not to be sold during the time the dower right of Mary Ann Graham is a lien on said property."

The widow and children answered. Upon trial at Special Term it was found:

VII. That the testator's half brother, William Lego, otherwise known as William Lythgoe, one of the legatees named in the will, died in September, 1880, leaving him surviving his four children, Charles, Martha and Francis Lythgoe, and Mary Ellen Kendrick, defendants in this action.

VIII. That the testator's half sister, Jane Lego, otherwise known as Jane Smith, went to Australia about 1837, purposing to make her home there, and that she afterwards went to New Zealand, but that her relatives have not heard from her for upwards of forty years, and that reasonable inquiry has been made at her last known address to ascertain if she be still living.

IX. That all of the testator's heirs and next of kin are non-resident aliens.

X. That dower out of the real property of the testator has been assigned to his widow, the defendant Maria Linden.

XI. That the testator gave to this court a power to appoint a referee to sell his real estate and to pay over the proceeds according to the direction of this court.

And as conclusions of law:

III. That a legal presumption arises that Jane Lego, *alias* Jane Smith, testator's half sister, died before the testator.

IV. That by reason of the death of William Lego, *alias* William Lythgoe, and of Jane Lego, alias Jane Smith, before that of the testator, the legacies to them lapsed, and as to their portions the testator died intestate.

V. That the testator's direction that all of his real estate be sold and converted into money produces an equitable conversion of his real estate into personalty, and that it must be distributed as personal property.

VI. That the dower interest of the widow, Maria Linden, forms no part of the estate to be distributed under the will.

VII. That besides said dower interest the widow, Maria Linden, is entitled to one-half of the remainder after the payment of Mark Lego's (Mark Lythgoe's) share and to $2,000 besides.

VIII. That the testator gave no power of sale to the executors, but did give to this court a power to appoint a referee to sell the real estate.

IX. That the share or portion of the estate to which Jane Lego's, *alias* Jane Smith's, children would be entitled if she left any her surviving, should be paid into court to await further inquiry as to whether or not she died leaving issue.

The trial judge appointed a referee to sell the real estate, and directed that the proceeds be brought into court to await its further order.

From the judgment entered upon these findings an appeal was taken to the General Term by Mark Lythgoe, Martha Lythgoe and Mary E. Kendrick, and by the plaintiffs, so far as material here, from so much of it as adjudges a conversion of the real estate of the testator into personal, so far as the interests of Maria Linden were involved, and that Maria Linden is entitled to a share in the proceeds of the sale of the real estate of which said James Linden died seized. From the judgment of affirmance the same parties Lythgoe appealed to this court, and the plaintiffs appealed from so much of it "as affirmed that part of the judgment of the Special Term that awarded to Maria Linden, in addition to her dower and her distributive share of the personal estate left by James

Linden, one-half or a portion of the proceeds of real estate directed to be sold under the will of James Linden, deceased."

*Henry Brewster* for executors, appellants. *B. Vanderhoeven* for Charles Lythgoe et al., appellants. The intention of the testator, which is to be derived from the language employed in the will itself, which is to be interpreted in the light of surrounding circumstances, is.the controlling element in the construction of wills. (*Byrnes* v. *Stillwell*, 103 N. Y. 458; *Keteltas* v. *Keteltas*, 72 id. 314; *Allen* v. *De Witt*, 3 id. 282; *Tillman* v. *Davis*, 95 id. 30; *Bogert* v. *Hertell*, 4 Hill, 497; *Wood* v. *Mitchem*, 92 N. Y. 175; *Oxley* v. *Lane*, 35 id. 340, 347; 2 Story's Eq. Juris. [13th ed.] 114, § 792; 1 Fonblanque on Eq., chap. 6, § 9, and notes; *Craig* v. *Leslie*, 3 Wheat. 577, 578.) The testator, by the "sixth" clause of his will, equitably converted his real estate into personal property for such uses and purposes as were expressed or implied by his will. (3 Redf. on Wills, 140, note 13; *Bogert.* v. *Hertell*, 4 Hill, 495, 496, 497, 498, 499, 501; *Hatch* v. *Bassett*, 52 N. Y. 361; *Morse* v. *Morse*, 85 id. 59; *Gott* v. *Cook*, 7 Paige, 534; *Power* v. *Cassidy*, 79 N. Y. 615; *Bramhall* v. *Ferris*, 14 id. 42, 46; *Delafield* v. *Barlow*, 107 id. 540; Leigh & Dal. on Eq. Con. 91, 93, 113, 114, 117, 120; *Gourley* v. *Campbell*, 66 N. Y. 174; *Fisher* v. *Banta*, Id. 476; *Hawley* v. *James*, 5 Paige, 318, 444; *S. C.*, 7 id. 219; *Betts* v. *Betts*, 4 Abb. N. C. 419; *Purdy* v. *Hoyt*, 92 N. Y. 446.) There is an absolute "·out and out" conversion by will when a testator directs that his estate be converted from one species of property into another for *all purposes* whatsoever. (3 Redf. on Wills, 140, §§ 7, 8; *Gourley* v. *Campbell*, 66 N. Y. 173; *Hatch* v. *Bassett*, 52 id. 173; *White* v. *Howard*, 46 id. 162; *Kane* v. *Gott*, 24 Wend. 641; *Delaney* v. *McCormack*, 88 N. Y. 175.) There can be no partial failure of a provision for an absolute "out and out" conversion, as in such conversions the property is converted for all purposes and under all circumstances. (*White* v. *Howard*, 46 N. Y. 162; *Moncrief* v. *Howard*, Id. 436; *Betts* v. *Betts*, 4 Abb. N. C. 386, 387,

420; *Gallup* v. *Wright*, 61 How. Pr. 281; 1 Jarman on Wills [Bigelow's 3d Eng. ed.] chap. 19, pp. 586, 590, 591.) The fact that it is necessary that the real estate should be sold to enable one of the residuary legatees to take his share as personalty does not make the sixth clause of the will an out and out conversion. (Leigh & Dal. on Eq. Con. 117–120; *Bogert* v. *Hertell*, 4 Hill, 496, 498, 499, 501; *Downing* v. *Marshall*, 1 Abb. Ct. App. Dec. 503; 1 Williams on Executors, 417.) The appellants, Charles Lythgoe, Martha Lythgoe and Mary Ellen Kenrick, are entitled, as heirs of the testator James Linden, to share in so much of the real estate or the produce thereof as is undisposed of by the will of James Linden, deceased. (*Bogert* v. *Hertell*, 4 Hill, 495, 496, 498, 499, 501; *Purdy* v. *Hayt*, 92 N. Y. 446; *Chamberlain* v. *Chamberlain*, 43 id. 429; *Girard* v. *Girard*, 58 How. Pr. 182; Leigh & Dal. on Eq. Con. 115, 118.) The undisposed of produce of the real estate of James Linden, deceased is no part of his general personal estate. (Leigh & Dal. on Eq. Con. 91–93; Code of Civil Pro. § 2514, subd. 13; *Bogert* v. *Hertell*, 4 Hill, 495, 496, 501, 512; *Betts* v. *Betts*, 4 Abb. N. C. 419; 2 Brown's Ch. Cas. [Eng.] 595; *Johnson* v. *Bennett*, 39 Barb. 237; 1 Jarman on Wills, chaps. 19, 586, 590, 591; *Chamberlain* v. *Taylor*, 105 N. Y. 193.) Mark Lego could have elected to take his share as real estate and thus have prevented a sale. (*Prentice* v. *Janssen*, 79 N. Y. 478; *Hetzel* v. *Barber*, 69 id. 11.) The real property of James Linden was not equitably converted at the time of his death. (*Moncrief* v. *Ross*, 50 N. Y. 436; *Vincent* v. *Newhouse*, 83 id. 511, 512; *Tillman* v. *Davis*, 95 id. 24; *Shipman* v. *Rollins*, 98 id. 326; *Delaney* v. *McCormack*, 88 id. 183; Leigh & Dal. on Eq. Con. 54; *Hancox* v. *Meeker*, 95 N. Y. 528, 535.) Nonresident aliens can take real property by descent or devise. (N. Y. Stat. of 1875, chap. 38; *Stamm* v. *Bostwick*, 40 Hun, 35, 38.) If the widow was entitled by the will to the property which she claims under the statute, she would be put to an election between dower and the provision made for her by

the will. (*In re Frazer*, 92 N. Y. 249, 250; *Konvalinka* v. *Schlegel*, 104 id. 129, 130; *Vernon* v. *Vernon*, 53 id. 351, 362; *Purdy* v. *Hayt*, 92 id. 446.)

*L. A. Gould & A. J. Skinner*, for Mark Lythgoe, appellant. The facts alleged in the complaint are not sufficient to show jurisdiction to maintain an action for the construction of the will. (*Horton* v. *Cantwell*, 108 N. Y. 265, 266; *Weed* v. *Weed*, 94 id. 243.) The lapsed legacies of $500 to Mary Jane Frazer, and the gold watch to James Linden, Jr., fall into the residuary estate. And Mark Lythgoe, as residuary legatee, is, by the terms of testator's will, entitled to one-third of the said lapsed legacies. (2 Rop. on Leg., 453; *Brown* v. *Higgs*, 4 Barb. 768; *Banks* v. *Phelan*, 4 Barb. 90, 91; *Roberts* v. *Cooke*, 16 Ves. 451; *King Woodhull*, 3 Edw. Ch. 79, 82; *Davers* v. *Dewes*, 3 P. Wms. 40; *Attorney-General* v. *Johnston*, Amb. 577; *Shanly* v. *Baker*, 4 Ves. 732; *Roberts* v. *Cooke*, 16 id. 451.) *King* v. *Strong*, 9 Paige, 94; 79 N. Y. 360; *In re Benson*, 96 id. 510.) The portions of the residuum that lapse, namely, the bequests to William and Jane Lego, so far as they consist of real estate, or the proceeds of real estate, remain real estate, and descend to the heirs of the testator. (2 Redf. on Wills, 125, par. 5; 2 Story's Eq. Jur. § 1214; Leigh & Dalzel on Eq. Con. 2, 93, 101, 115, 116; Bispham's Prin. of Eq. 368; *Fletcher* v. *Ashburner*, 1 Bro. C. C. 435, 497, note 1; *Ackroyd* v. *Smithson*, Id. 502, 503, 515; *Johnson* v. *Woods*, 2 Beav. 409, 413; *Hopkinson* v. *Ellis*, 10 id. 160, 175; *Shallcross* v. *Wright*, 12 id. 505, 508; *Smith* v. *Claxton*, 4 Madd. 484; *Wright* v. *M. E. Church*, 1 Hoff. 202; *Hawley* v. *James*, 7 Paige, 213; *Wood* v. *Coné*, Id. 471; *Bogart* v. *Hertell*, 4 Hill, 496; *Betts* v. *Betts*, 4 Abb. N. C. 317, 419, 420; *Chamberlain* v. *Taylor*, 105 N. Y. 194, 195.) The heirs of James Linden may take the proceeds of real estate as money. (2 Story's Eq. Jur. 1213; *Johnson* v. *Woods*, 2 Beav. 412, 414.) The heirs may elect to take the land and prevent the conversion into money, the rights of others not being affected thereby. (*Hetzell* v. *Barber*, 69 N. Y. 1, 11; *Prentice* v. *Janssen*,

79 id. 485; *Armstrong* v. *McKelvey*, 104 id. 183.) That the heirs are aliens does not prevent their taking and holding real estate ; the females absolutely, and the males as against every one except the State. (2 R. S. [6th ed.] 1097, 1098, §§ 43, 44 ; *Luhrs* v. *Eimer*, 80 N. Y. 171, 177, 178; *Hall* v. *Hall*, 81 id. 131, 137 ; *Storms* v. *Bostwick*, 40 Hun, 35; *Goodrich* v. *Russell*, 42 N. Y. 177. The respondent herein having had her dower is estopped in equity to claim under the statute of distributions, as personal property, what has already been deemed real estate for the purpose of admeasuring her dower, so long as there are heirs to take the land. (4 Kent, 35, and note *a*; Stuart's View of Society, 29, 30, 223–227; Story's Eq. Jur. § 629 ; 5 Stat. S. C. 163; *Evans* v. *Pierson*, 9 Rich. L. [S. C.] 9 ; *Avant* v. *Robinson*, 2 McMullan [S. C.] 215 ; 2 R. S. [6th ed.] 1121, § 3 ; 4 Kent, 58.) The doctrine of absolute equitable conversion, when applied, reaches the dower right of the widow, which is a mere chattel interest or chose in action. (Cameron on Dower, 321–324; *Coster* v. *Clarke*, 3 Edw. Ch. 438 ; 4 Kent Com. 50.) The fact that respondent has had her dower admeasured and assigned to her from the realty itself is a solemn admission on her part that there has been no conversion of the realty as to her. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 445; *Vincent* v. *Newhouse* 83 id. 505; *Chamberlain* v. *Taylor*, 105 id. 194, 195; *Wilder* v. *Ranney*, 95 id. 7, 12.)

*Edward S. Peck* for respondent. There was an out and out conversion by the will of the testator's real estate into personalty. (2 Redf. on Wills, 140, §§ 7, 8, 13; Leigh & Dal. on Eq. Conversion, 128, 133; *Kane* v. *Gott*, 24 Wend. 659 ; *Johnson* v. *Bennett*, 39 Barb. 237–251; *Stagg* v. *Jackson*, 1 N. Y. 206, 212; *Hatch* v. *Bassett*, 52 id. 359, 361; *Moncrief* v. *Ross*, 50 id. 431, 436; *Lent* v. *Howard*, 89 id. 169–177.) The conversion being " out and out " the widow will be entitled to her distributive share of the lapsed legacies. (*Edsall* v. *Waterbury*, 2 Redf. 48 ; *Sink* v. *Sink*, 53 How. Pr. 400 ; *Lefevre* v. *Lefevre*, 59 N. Y. 434, 447; Redf. on Sur.

Pr. [2d ed.] 595; *Hatch* v. *Bassett*, 52 N. Y. 362; *Kerr* v. *Dougherty*, 79 id. 327, 349.) All the testator's estate after deducting the dower having been converted into personal property all lapsed legacies will be subject to distribution under the statute. (Redf. on Sur. Pr. [2d ed.] 574; id. [3d. ed.] 589; Willard's Eq. [Potter's ed.] 512; 1 Roper on Legacies, 484, 485; *Vernon* v. *Vernon*, 53 N. Y. 351, 362; *Edsall* v. *Waterbury*, 2 Redf. 48; *Sink* v. *Sink*, 53 How. Pr. 400; Leigh & Dal. on Eq. Conversion, 128–133; Meggison on Assets in Eq. 205; *Kearney* v. *Missionary Society*, 10 Abb. N. C. 278, ·279; *Meakings* v. *Cromwell*, 5 N. Y. 136, 143; 3 R. S. [6th ed.] 58, § 6; 2 id. 1096; Gerard on Titles to Real Estate, 92; *In re Hodges*, N. Y. L. J., April 14, 1888.) Inasmuch as all the legacies lapse, except that to Mark Lego, after the payment of his share, the widow will take that share given to her by the statute of distributions, which gives her one-half of the remainder and $2,000 besides. (3 R. S. [6th ed.] 104, § 90, sub. 3; Redf. on Sur. Pr. [2d ed.] 594; *Doughty* v. *Stillwell*, 1 Bradf. 300.) The will directs a positive and unconditional conversion of the real estate into personal property, and the conversion is held to take place at the time of the testator's death. The testator's whole estate would, therefore, be considered as personal from the time of his death. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 432; *Lent* v. *Howard*, 89 id. 169; *Horton* v. *McCoy*, 47 id. 25, 26.) As the testator directed all his property to be converted into money his widow will be entitled, first, to her dower, which was her's absolutely, and could not be·taken away by the testator, and which really formed no part of his estate. (*Konvalinka* v. *Schlegel*, 104 N. Y. 125; *Wood* v. *Wood*, 5 Paige, 601; *In re Frazer*, 92 N. Y. 250; *Havens* v. *Havens*, 1 Sandf. Ch. 331; *Adsit* v. *Adsit*, 2 Johns. Ch. 448; *Church* v. *Buell*, 2 Denio, 430; *Lewis* v. *Smith*, 9 N. Y. 502; *Sandford* v. *Jackson*, 10 Paige Ch. 266; *Fuller* v. *Yates*, 8 id. 325.) The direction to sell was a valid trust or a valid power in trust. (2 R. S. [6th ed.] 1109, § 69; id. 1116, § 122; *Manice* v. *Manice*, 43 N. Y. 364; *Meakings* v. *Cromwell*,

5 N. Y. 136, 143; *Van Beuren* v. *Dash,* 30 id. 393, 414.) To render a subsequent provision in a will repugnant to a previous one the last provision must be entirely incompatible with the first. The last provision must be such that if effect be given to it the former must entirely fail. (*Sweet* v. *Chase,* 2 N. Y. 73–79; *Taggart* v. *Murray,* 53 id. 233, 236.)

DANFORTH, J. The important question is whether the direction for conversion is, by the terms of the will, absolute and imperative, so as to be complete to all intents and purposes, or whether the conversion directed is for the purposes of the will only. If the latter, then if those purposes fail, or do not exhaust the proceeds, the property unapplied, whether the estate has been actually sold or not, will devolve according to its original character. (*Gourley* v. *Campbell,* 66 N. Y. 169.) Here the controversy is between Maria Linden, the widow respondent, and the residuary legatees, and, according to the construction given, the first gains and the other class loses. Was there a conversion so far as the widow was concerned? The residuary legatees are the next of kin and heirs-at-law of the testator, and he directed the proceeds of the sale of his real estate to be given to them, and as non-resident aliens the doctrine of conversion would, if necessary, apply in their favor. (Lewin on Trusts [7th ed.] 812.) He may be deemed to have known it and framed his will for their benefit. This was the view of the General Term. That court regarded it as clear that " the testator intended that his estate should be converted into personalty in order that his alien brother and sister might take." It was, in fact, unnecessary to accomplish that object; as to all others except the state they could take and hold as heirs or devisees. (Chap. 38, Laws of 1875.) There is however, nothing to indicate that his purpose was to give the widow more than the law entitled her to demand.

It is plain he wished her to get no part of his estate, and, indeed, cut her off with $1, and directed his executors to devote, if necessary, the rest of his property to resisting any attempt

she might make to get more. Of course, if his language requires an out and out conversion, this exclusion of the widow is of no moment, but it is of some aid in getting at his intent. We are of opinion that as, to the widow, there was no conver-' sion of the realty, and that her rights are not increased by the provisions of the will in that respect. She is entitled to her dower in the real estate of which the testator died seized, and if he died intestate as to any portion of his personal estate, she is entitled to a distributive share of that portion. (*Lefevre* v. *Lefevre*, 59 N. Y. 434.) She neither gains nor loses through the provisions of the will. Her rights are independent of them. The testator devised his real estate to his half brother and half sister. The will contains no words from which an intimation can be gathered that he intended to impress a new character on that estate, or that either the power of sale or its exercise should change the direction of this bounty, or alter the essential nature of the property so characterized. No wish of the testator is expressed which requires a sale except for some purpose of the will itself. If not required for that purpose a conversion will not be presumed. (*Chamberlain* v. *Taylor*, 105 N. Y. 185.) If Linden had left no will, the widow's rights in the real estate would have been limited by her dower interest; and there is nothing in that instrument or the circumstances of the case which can increase her share. If a sale is necessary, the residue of the proceeds of the land will belong to the heirs. If unnecessary for any purpose directed by the will, they are entitled to it in its present form, and a sale against their objection should not be decreed. They have a right to that, and "the notional conversion" will subsist only until the *cestui que trust*, who is competent to elect, intimates his intention to take the property in its original character. (*Seeley* v. *Jago*, 1 P. Wms. 389.)

The appeal must prevail and the judgment of the General and Special Terms be reversed and new trial granted, with costs to all parties, to be paid out of the fund.

We are furnished with a record showing a separate appeal by Martha Lythgoe from the same judgment, but differing in

no other respect from the case just considered, and to which, as one of several appellants, she was a party.

Her appeal should be dismissed as unnecessary, without costs to either party.

All concur, except EARL, J., not voting.

Ordered accordingly.