MICHAEL P. MOORE, executor, &c. appellant, *vs.* WM. P. MOORE and others, respondents.

It is discretionary with the surrogate to refuse an order for the sale of real estate for the payment of debts of the testator, when the executor has personal property on hand undisposed of; and this court will not, on appeal, interfere with that discretion.

THIS was an appeal from an order or decree of the surrogate of the city and county of New-York. Lewis Moore made his will on the 31st of May, 1840, appointing the appellant, Michael P. Moore and Lewis Moore, two of his sons, his executors. On the 15th December, 1840, he made a codicil to his will, making some slight changes in the disposition of his property. The testator died on the 8th June, 1843. The will and codicil were proved, and letters testamentary were issued to the appellant alone. On July 1, 1844, the appellant, as executor, having made and filed his inventory of the estate, and finding it insufficient to pay the debts of the testator, presented his petition to the surrogate of New-York, for an order to sell the real estate. The petition alledged that the proceeds of the personal property were $1605,69; that he paid out in course of administration $1283,91, and that the outstanding debts amounted to $13,546,38, without interest; that a bond of the testator to the United States Insurance Company was not included in a previous similar application made by him, because he supposed it was secured on the testator's real estate, which was incorrect, and that none of the debts were so charged. The petition then described the real estate, and gave the names of the heirs, devisees, &c. The debts due upon the estate consisted chiefly of a bond to the United States Insurance Company for $10,000, on which $7000 was due, and $6008,38 claimed to be due to the appellant as executor, for professional services as a physician, and for services as the testator's agent while he was living, in attending to his property and affairs generally. The heirs and devisees appeared upon the order to show cause why the sale should not be decreed, on August 16, 1844, and seemed to have contested the application in all its aspects, though no formal issue was

joined, nor any statement of the defense made. Evidence was taken on both sides from this time until the 17th October, 1844, when the appellant was permitted to file an additional petition, claiming a further sum of $3717,18, due him from the estate, and which was omitted by mistake in his original petition. The items in this claim consisted chiefly of errors in the debits and credits of the previous accounts discovered during the investigation. The case then proceeded until the 29th November, 1844, when the evidence was closed, and the surrogate, on the 18th September, 1845, made a decree denying the prayer of the petition, with costs to be paid by the petitioner personally. From this decree an appeal was taken by the petitioner to the court of chancery, and the hearing devolved on this court.

*A. G. Rogers,* for the appellant.

*E. Sandford,* for the respondents.

*By the Court,* MITCHELL, J. The laws of 1801 (*vol.* 1, *p.* 323, § 20) allowed an executor to apply for the sale of the real estate of the deceased, whenever he discovered, or *suspected,* that the personal estate was insufficient to pay the debts of the deceased; the executor also rendering an account of the personal estate, and of the debts, as far as he could discover the same. The surrogate was to order a sale of the real estate if he found that the personal estate was not sufficient to pay the debts of the deceased. The revised laws of 1813 (*vol.* 1, *p.* 450, § 23) were substantially the same. The revised statutes of 1830 introduced some different provisions. They only authorized the application by the executor after he should have filed his inventory, and within three years after the granting of letters testamentary. (2 *R. S.* 100, § 1.) And the surrogate was authorized to make the order to show cause why the real estate should not be sold, *only* if it appeared to him that all the personal estate applicable to the payment of the debts *had been applied* to that purpose. He had no such power as he had before, of acting, if it appeared that the personal estate was insufficient

Moore *v.* Moore.

to pay the debts, although it had not all been applied to that purpose. Under this law he must see that it had been all applied. (*Id.* 101, § 5.) After the citation is issued, and the parties appear before the surrogate, it is expressly declared that "he shall make no order for" the sale of the real estate, until upon due examination he shall be satisfied, among other things, that the executor has fully complied with the preceding provisions of that title of the revised statutes; and that the personal estate is insufficient for the payment of the debts; "and that the whole of such estate, which could have been applied to the payment of the debts of the deceased, had been *duly applied* for that purpose."

The surrogate, in these cases, acted under a limited authority, and if he was not satisfied that the personal estate had been actually applied in the payment of debts, he had no authority to order a sale under the revised statutes. In these cases he had no discretion; so that if he found that the personal estate had not been applied, in fact, though it were insufficient to pay the debts, he could not order a sale. An amendment was made to this law by the law of 1837. (*Laws of* 1837, *p.* 531, §§ 40, 41, 42.) But it was suggested by the counsel for the appellant, that these sections apply only to contracts made by the deceased for the purchase of lands, and not to cases where he had a legal title to the lands. Section 40 authorizes the executor to apply for authority "to mortgage, lease, or sell the real estate of their testator," *and* "for the *sale* of the interest of such testator in any land held under a contract for the purchase thereof," whenever he discovers that the personal estate is insufficient to pay the debts. This clearly provides for two cases; one the "authority to mortgage, lease or sell the real estate of the testator," and the other for the sale of his interest in any land held under contract. The contracts are not to be leased or mortgaged. They are only to be sold. The *real* estate may be mortgaged, leased or sold.

Then section 41 for the first time gives a discretion to the surrogate. It is that he "may in his discretion order such mortgage, lease or sale to be made, although the whole of the

personal property of the deceased, which has come to the hands of the executor or administrator, has not been applied to the payment of the debts." It speaks of "such mortgage, lease or sale;" and as no mortgage or lease of contracts of purchase had been before spoken of, but mortgages, leases and sales of real estate had been before spoken of, the words, such mortgage, lease or sale, necessarily include the real estate; and it is entirely in the surrogate's discretion whether he will order a sale before the application of the personal property to the payment of the debts, or not. The terms are, "the surrogate may in his discretion." This was intended to make his judgment on that point conclusive, and not subject to the opinion of a higher court. Whether it would be expedient to allow an executor to retain the personal estate in his own hands, when it is the fund first applicable to the payment of debts, and let him increase the fund in his hands by selling the real estate, is a matter not so much of strict rule as of discretion; and the legislature chose that the discretion of the surrogate should be the rule on the subject. If he does not deem it discreet to order a sale while the personal estate is partly unapplied, the executor can immediately apply the whole personal property, and renew his application then for the sale of the real estate; and after that the discretion of the surrogate ceases. Thus no harm is done to any one.

· As seen before, without the aid of this section, giving a discretion to the surrogate, he had no power to order a sale until the personal was fully applied; so that if the executor does not, in this case, come within that section, and subject to that discretionary power, he has no right to ask for a sale.

In this case it was admitted, and the case clearly showed, that the executor had cash in hand, the proceeds of personal estate belonging to the deceased, amounting to $321,78, and that he also held three or four notes of H. L. Pierson, indorsed by E. Lord, which were inventoried as good and as worth $3572, each being for $893 and interest, payable in 1844, 1845 and 1846. All this was personal estate applicable to the payment of the debts of the deceased, and it should have been so applied before re-

sorting to the real estate. If there were any circumstances to authorize a departure from this general rule, the surrogate alone was to judge of them. But none were shown to him, and he having alone the discretionary power to order a sale in such a case, has deemed it proper to refuse to make such order. His order must therefore be affirmed with costs. But the present order may be so entered as to show that the court does not now pass upon the validity of the debts alledged by the executor to be due by the deceased.

It has been deemed proper to look into these claims, so far as to judge whether they are of such a nature as to entitle them to any further protection in the order to be made. The one due to the insurance company is under seal, and so cannot be barred by the statute of limitations : it needs no protection. The other is claimed by the executor. He is a son of the testator, and attended to his father's pecuniary affairs from 1838 to June 8, 1843, when his father died; acting as his father's agent, without any agreement for any compensation, until December, 1841, when his father signed an agreement to allow him $500 per annum from the time he first took charge of the business. For this he charges $2459 and expenses. There is conflicting testimony on the question whether the father was then competent to transact business. He also charges $3306 for medical attendance on his father from the spring of 1839 to December, 1842. He frequently, during this period, traveled from the city of New-York, where he was practicing as a physician, to Hackensack, a distance of about 12 miles, where his father resided, and attended to his father as a physician. Many of his visits were also made as agent, and as a son to a father, only; and one winter he passed there, with his wife, to improve his own health. He never presented a bill to his father, for those services, apparently kept no account of them in his books, and threatened some of his relatives to present such a claim, on account of their supposed ill conduct to him.

He had taken out letters testamentary on his father's will, in Bergen county, New Jersey, as well as here; and after his father's death applied for authority to sell real estate there,

which was refused. On that application he presented, and swore to, a petition declaring that he had exhibited, under oath, *a just and true account of the debts of the deceased, as far as he could discover the same.* That account contained no claim for professional services, but a claim for agency only "for five years, at $500 per year, besides interest and expenses." According to this sworn statement he had not then discovered this claim for professional services. It would seem probable that if there had been any just foundation for this last claim, it would have been not only discovered before that time, but presented also. It does not, therefore, commend itself to the especial favor of the court. Without passing, however, definitively on the validity of that claim, it is proper that the ordinary judgment of affirmance be entered.

Decree affirmed

[NEW-YORK GENERAL TERM, June 11, 1852. *Edwards, Mitchell* and *Roosevelt,* Justices.]