CONVERSE and others, superintendents of the poor of the county of St. Lawrence, *vs.* McARTHUR.

The court of sessions made an order that the defendant should support his mother, at his own house; or, in default thereof, that he should pay so much per week. After he had supported her at his house about one year, she left him, without any just cause. The superintendents of the poor paid for her support, while so absent, for a time, and then took her to the poor-house. After she left the defendant's house, he gave notice to the superintendents that he was ready and willing to receive and support her in his family, and not elsewhere; *Held*, he was not liable for a breach of the order.

An order for the support of an indigent parent, made by the court of sessions, consisting of the county judge and two justices of the peace, one of the justices being also a superintendent of the poor and joining in the application and notice and in the motion for the order, is void, *it seems*; although the order appears to have been entered by the consent of the attorney of the son.

THIS was a motion for a new trial, upon a bill of exceptions. The suit was to recover the amount required by an order of the court of sessions of the county of St. Lawrence to be paid weekly, by the defendant, for the support of his mother; and was tried at the St. Lawrence circuit, before Justice Cady. On the 6th of September, 1848, an application in writing, upon due service of a copy of the same and notice on the defendant, was made to that court for an order that the defendant support his mother. The application and notice were signed by all the superintendents of the poor, of whom J. B., one of the justices of the court of sessions, was one. The order was granted by the court, and it recited the names of the county judge and the two justices, in the caption; and it also recited the application, and stated that on filing it, and "on motion of J. B. and other superintendents as aforesaid," and with the consent of the attorney of the defendant, it was ordered that the defendant take his mother "to his own house and there provide for, maintain and support" her; and in default, he was to pay to the plaintiffs two dollars per week for that purpose, &c. It was proved that his mother lived with the defendant nearly a year after the order was made, and then left, and lived a few weeks with her son-in law, who resided about 100 rods from the resi-

Converse *v.* McArthur.

dence of the defendant, and also a short time with another neighbor. The latter complained to the superintendants that he could not keep her, and they sent her to the poor-house. A few days afterwards the defendant served a written notice upon the plaintiffs, that he was willing to support his mother at his own house, but not elsewhere; and that he should not pay for her support out of his family. He also saw one of the plaintiffs, and informed him that his doors were always open to her, and complained that evil disposed persons had persuaded her away. But he said he would not go after her; that she must come back as she went away. He also repeatedly informed one of the persons at whose house she was staying, that he was willing to keep her. On the trial he introduced evidence to show that she was well and kindly treated, while at his house. The court decided that the defendant was precluded from making any opposition to the order, which he might have done before it was entered, and that he was bound to go after his mother and take her home and support her. The jury found a verdict for the plaintiffs, and the defendant made a bill of exceptions.

*A. B. James*, for the defendants.

*W. P. Barker*, for the plaintiffs.

*By the Court*, HAND, P. J. I am inclined to the opinion, that the order of the sessions was void on its face. The court was composed of the county judge and two justices; all of whom were necessary to constitute a court of sessions. (*Const. art.* 6, § 14; *Jud. Act*, § 40. *Am. Jud. Act*, § 35.) And the record shows, that one of them was both party and judge, which the law does not allow. (2 *R. S.* 275, § 2. *Foxham* v. *Tithing*, 2 *Salk.* 607. *Great Charte* v. *Remington*, 2 *Str.* 1173. 1 *Salk.* 396, 7, 8. *Reg.* v. *Chelt. Com'rs*, 1 *Q. B. Rep.* 466. 3 *Bl.* 298. *And see Oakley* v. *Aspinwall*, 3 *Comst.* 547, *and cases there cited;* 14 *Vin.* 575; *Co. Litt.* 157 *a; Earl of Derby's case*, 12 *Co. R.* 114; *Hob.* 87; 3 *Bac. Abr.* 756; *Paddock* v.

*Wells,* 2 *Barb. C. R.* 331.) A judge, it is said, may sit, where jurisdiction is conferred by the constitution, and upon no other tribunal; for otherwise there will be a failure of justice. (*Oakley* v. *Aspinwall, supra. Paddock* v. *Wells, supra. In re Leefe,* 2 *Barb. Ch. Rep.* 39. 2 *Str.* 1173. 7 *Q. B. Rep.* 1015.) But even that would not aid the plaintiffs in this case; for if the justice had refused to attend or sit as a member of the court, another justice would have been substituted by the county judge. (*Jud. Act,* § 40. *Am. Jud. Act,* § 35.) Cases were cited by the counsel for the plaintiffs, in which the judge was a stockholder, or related to a stockholder. (*Stuart* v. *Mech. & Farm. Bank,* 19 *John.* 501. *Bank of Lansingburgh* v. *McKie,* 7 *How. Pr. R.* 369.) The first was put upon the ground that the chancellor had exclusive jurisdiction of cases in chancery, and, though a stockholder, was not a "party;" and the other, also, upon the ground that a stockholder was not a party. This may be within the spirit of the position that a suit by and against a moneyed corporation is not prosecuted or defended for the immediate benefit of a stockholder, though he should own ninety-nine hundreths of the stock. But when the memory of the distinguished jurist, who delivered the opinion of the court in the celebrated case of *McCulloch* v. *State of Maryland,* was assailed on the subject, his friends alleged that he disposed of all his interest as a stockholder in the United States Bank before the decision; and that he did so, because of the pendency of that suit. The decrees and orders of a lord chancellor of England, were reversed in the house of lords, because he was a shareholder in a corporation which was a party. (*Dimes* v. *The Grand Junction Canal Co.,* 16 *Eng. L. & E. R.* 63. *And see Dimes' case,* 14 *Q. B.* 554, *and cases there cited.*) It is true, the lords who delivered opinions, seem to have thought his decrees and orders were not void, but voidable. But our statute, and the case of *Oakley* v. *Aspinwall,* are decisive; and there is nothing in the case in the house of lords; giving the least sanction to the assumption of jurisdiction in such cases. And certainly, there is every good reason, both

legal and moral, why a judge should not sit, where he or his relatives are interested.

But it is insisted that the defendant is estopped, because the order was entered by consent of his attorney. There are some cases, or rather *dicta,* perhaps, to that effect. (*Hardrcs,* 44. *Bronson, C. J.,* 3 *Comst.* 562. 3 *Bl.* 298. 1 *G. B.* 475.) And such seems to be the rule as to challenges to jurors. But in this case, as to the entry of the orders, the proceedings were *in invitum;* and besides, the act of a party as judge in his own cause, as we have seen, is simply void, under all circumstances. And perhaps this is the safer and better rule, where the judge is incompetent from interest or relationship. (*Oakley* v. *Aspinwall, supra. Edwards* v. *Russell,* 21 *Wend.* 63. *Foot* v. *Morgan,* 1 *Hill,* 654. *Striker* v. *Mott,* 6 *Wend.* 465.) The statute is peremptory, that he shall not sit. It seems to me there should be no exception, unless, perhaps, where, by the provisions of the constitution, the legislature has no power to prevent a failure of justice by transferring the cause to another jurisdiction.

That his duties in this case, as superintendent of the poor, were wholly official, and in which the justice had no personal interest, does not obviate the difficulty. He was not only a party nominally, but he represented interests opposed to the defendant. The superintendents of the poor were a corporation, enforcing a duty by legal proceedings against the defendant. Such a corporator, possibly, can be a witness in certain cases. (*Pack* v. *Mayor, &c. of New-York,* 3 *Comst.* 489.) But he should not act as judge. In the case of *Foxham* v. *Tithing,* the order in which the justice joined at the sessions, was in the matter which concerned his office as surveyor of highways, and it was quashed.

But if this order was valid, the plaintiffs showed no default on the part of the defendant. He kept his mother about a year and treated her well; his doors were always open to her, and he was ready and willing to support her. She left him without cause, and he had no power to prevent her. He could not restrain her from visiting her daughter and the neighbors. She,

and they; and the plaintiffs; knew that he would support her if she would return; and she could have been conveyed to his house a few rods distant, probably with less trouble and expense than to the poor-house. I do not say that he was under no obligations to extend to her, at least, the ordinary courtesies of life, to enable her to see her friends; nor that filial regard should not have prompted him, under all the circumstances, to have gone and invited his own mother to leave the poor-house. But we are considering the legal rights of the parties. As she was not insane, he could not confine or restrain her; and if, as he complained, officious persons persisted in enticing her away without any fault on his part, he was not obliged to go after her. This view of the case renders it unnecessary to examine some other points, supposed by the counsel to arise.

There should be a new trial, with costs to abide the event.

Ordered accordingly.

[FULTON GENERAL TERM; January 2, 1854. *Hand, Cady* and *C. L. Allen;* Justices.]