In the Matter of the Application of CHARLES L. BINGHAM, as Receiver, etc., as a Creditor of JAMES FAULKNER, Deceased, for Authority to Mortgage, Lease or Sell the Real Estate of the Decedent for the Payment of his Debts.

Under the provisions of the Code of Civil Procedure (§§ 2750, 2751) limiting the time within which proceedings may be instituted by a creditor for the disposition of the real estate of a decedent for the payment of his debts to three years after letters of administration were first duly granted, but providing that the time during which an action is pending between a creditor and the executor or administrator, shall not be part of the time limited "for presenting a petition founded upon a debt which is in controversy if the creditor has, before the expiration of the time, himself filed  *  *  *  a notice of the pendency of the action," it is not requisite that the petition itself should state that it is founded upon a debt which was in controversy in the action; this may be supplied by proof.

In such proceedings it appeared that the debt upon which it was founded was the subject-matter of an action between the creditor and the executor. No evidence was given that the cause of action alleged was contested, save proof of the bringing of the action, and that it had been pending six months at the time of filing the petition. *Held*, the reasonable presumption was that the claim was disputed, and so the proof was sufficient to give the surrogate jurisdiction.

H., who held mortgages executed by one of the heirs and devisees upon lands specifically devised to him and upon his interest in lands forming part of the residuary estate, was not named in the petition or citation. Afterwards upon affidavit of the petitioner that certain persons, not including H., had or claimed an interest, citations were issued to them and also to H. The latter appeared and filed an answer, setting forth objections to the jurisdiction of the surrogate and matters upon the merits. After the close of the proof H. submitted propositions to the surrogate with requests to find and excepted to the findings made. *Held*, that by his appearance and taking part in the proceedings H. became a party, and the surrogate acquired jurisdiction to make a decree as against him.

While *it seems* appearance or consent cannot confer upon a tribunal jurisdiction of a subject-matter not within its jurisdiction, the rule is otherwise as to jurisdiction of the person.

The decedent died seized of certain real estate which was described in the petition, but was not included in the *lis pendens*. This real estate was specifically devised and was not covered by the mortgage held by H. and he had no opportunity within the three years to cause or suggest that it

Statement of case.

be charged in the proceedings. *Held,* the statute contemplated that all the real estate should be charged, save as excepted (§§ 2750, 2751); and that H. was entitled to a direction in the decree that the specifically devised real property, described in the *lis pendens,* should be charged for only the same proportionate amount of the deficiency appearing on the sale of the residuary lands, with which it would have been charged had the omitted lands been included.

The rights of creditors to the payment of their debts out of the proceeds of the real estate of a testator, in the absence of proof of *laches* on their part, may not be denied because of the fact that the executor has squandered the personal property which came to his hands.

It appeared that in an action brought by the People, on the relation of the surrogate as such, against the decedent and others, judgment had been rendered against the defendants; a claim founded on this judgment was presented in these proceedings; this was rejected by the surrogate as not a lien upon the real estate for the reason that no *lis pendens* had been filed in the action. It did not appear what was the purpose of that action. *Held,* that it could not be assumed from the title that the surrogate had any personal interest in the judgment and while, if when the claim thereon was presented the objection had been taken, the question would have arisen whether the relation of the surrogate to it was such as to disqualify him from adjudicating upon it, as the question was not presented and the claim was rejected, it did not affect the validity of the decree in proceedings which were not founded upon the debt represented by the judgment.

*It seems* that where a disputed claim against a decedent's estate has been referred under the statute (2 R. S. 88, § 36, as amended by chap. 261, Laws of 1859), the claimant is entitled to file a *lis pendens* under said provision of the Code, and so to acquire a lien upon the decedent's real estate. Although the method so provided for determining the controversy arising upon the claim is a special proceeding, and the said provision of the Code, by its terms, relates only to an action, yet as the statute provides that the same proceeding shall be had upon such a reference, "as if the reference had been in an action," and that the judgment therein "shall be valid and effectual," as if rendered in an action (2 R. S. 89, § 37), the intent was to give it the benefit of the practice pertaining to actions so far as practically applicable.

The claim upon which the proceedings for the sale of the decedent's real estate was based, was an assessment upon the shareholders of a national bank, of which the decedent was one; he was at the time of his decease the owner of certain shares therein, and he held certain other shares which came to him from a son who died intestate, leaving his father his only next of kin; F., the father, with another, took out letters of administration; F. took possession of the shares and voted upon them with his other shares, and received the dividends thereon; he never made

any judicial settlement of his accounts as administrator, nor was the stock of his son transferred to him on the books of the bank. *Held*, that the assessment upon said stock was properly rejected as a claim against the estate of F.; that while the residuary interest in the stock after payment of the debts of his intestate belonged to him, while he held the relation of administrator, which could only be terminated through a judicial settlement of his accounts, he could not be treated as having the legal title to the stock other than in his representative capacity.

The will of F. contained an express direction to his executors to pay his debts; he gave his residuary estate to his heirs and next of kin in the same proportion as if he had died intestate, to be divided between and paid them in cash in five years from his decease; he gave to his executors power to sell the property and convert it into money and make the distribution. *Held*, that the direction as to payment of debts did not make them a charge upon the testator's real estate, nor was there, by the residuary clause, a conversion of the realty included therein into personalty.

(Argued March 19, 1891; decided June 9, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of June, 1890, which affirmed a decree of the surrogate of the county of Livingston, directing a sale of lands of which James Faulkner, died seized, for the payment of his debts.

The First National Bank of Dansville, N. Y., having been organized pursuant to the laws of the United States, and, after having carried on its business for many years, became insolvent, and Charles L. Bingham was, by the comptroller of currency of the United States, duly appointed receiver of the bank in September, 1887, and entered upon the performance of his duties as such. The comptroller of the currency made an assessment of 100 per cent of the amount of capital stock of the bank upon its shareholders. James Faulkner, who died in October, 1884, was, at the time of his decease, the owner of 290 shares of the stock of $100 each, and held fifty more shares which came to him from his son, Samuel D. Faulkner, who died intestate in 1878, and of whom the father was the only heir and next of kin, and with Henry J. Faulkner took letters of administration of his estate. James Faulkner,

deceased, by his will nominated James Faulkner, Jr., Lester B. Faulkner and another as executors. On April 25, 1885, the will was admitted to probate and letters testamentary issued to James Faulkner, Jr. His letters were revoked in October, 1887, and in December following letters were issued to Lester B. Faulkner. Before the expiration of three years from the time those first letters were issued, Bingham, as receiver, brought an action against the executor to recover such assessment made by the comptroller of the currency upon the stock of the bank belonging to the estate of the testator, and within that time caused to be filed in the offices of the clerks of Livingston and Allegany counties notices of the pendency of the action. The petition by which this proceeding was instituted was filed July 9, 1888. Charles J. Bissell and Christiana Smith, respectively, came in as creditors of the testator and established their claims.

The surrogate determined that the estate of the decedent was indebted to the receiver, $29,000, to Bissell, $620.65, and to Smith, $2,900; and that the petitioner was entitled to a decree. It was entered accordingly.

Other facts appear in the opinion.

*W. A. Sutherland* for Hyland, appellant. Proceedings in Surrogate's Court to sell real estate are in hostility to the common-law rights of the owners of such real estate, and the statute conferring such right must be strictly followed. (4 Kent's Comm. 419; 3 Black. Comm. 430; *In re Bellesheim,* 17 N. Y. S. R. 13; *Atkins* v. *Kinnan,* 7 Cow. 88; *In re G. Bank,* 39 Hun, 181; Sedg. on Stat. Const. 300, 382; *Elwood* v. *Northrup,* 8 N. Y. S. R. 687.) The Surrogate's Court failed to acquire jurisdiction of these proceedings, because the petition was not filed within three years after letters were first duly granted upon the estate, and the time was not extended by proper *lis pendens.* (Code Civ. Pro. § 2750.) It was necessary for the petitioner to show affirmatively that his petition was filed within three years after the granting of letters, or that his time had been extended by *lis pendens.* (*Slocum* v.

*English*, 62 N. Y. 494.)   There was nothing before the surrogate to show that his jurisdiction to entertain these proceedings was extended beyond three years by the filing of proper *lis pendens.*   (Code Civ. Pro. §§ 191, 2751; *Brown* v. *Sigourney*, 72 N. Y. 122; *Roosevelt* v. *Linkert*, 67 id. 448; *King* v. *Galvin*, 62 id. 238; *Davidson* v. *Alfaro*, 80 id. 660; *Knapp* v. *Deyo*, 108 id. 518; *Campbell* v. *Mandeville*, 110 id. 628.)   The petitioner is not aided by introducing in evidence before the surrogate a copy of the *lis pendens*.   (Code Civ. Pro. §§ 2516, 2750.)   The Surrogate's Court failed to acquire jurisdiction to oust George Hyland because he was not named in any petition.   (Code Civ. Pro. §§ 2516, 2517, 2750, 2752, 2759; *Lambert* v. *Craft*, 98 N. Y. 342.)   The surrogate failed to obtain jurisdiction to entertain these proceedings, because the petition failed to comply with section 2752 of the Code and because the decree could not comply with section 2763.   (*Mead* v. *Sherwood*, 4 Redf. 352; *Dennis* v. *Jones*, 1 Dem. 80; *O'Grady* v. *O'Grady*, 28 N. Y. S. R. 903; *Kendan* v. *Washburn*, 14 How. 380.)   One of the facts which must be found to give a surrogate power to sell real estate is, by subdivision 5, section 2759, that all of the personalty of the decedent must have been previously applied to the payment of his debts; or else that the executors have proceeded with diligence in converting the personal property into money, and have applied it, when so converted, to the payment of those debts, and that the amount so applied was insufficient for the payment of the same.   (Code Civ. Pro. § 2545; *In re Hoyt*, 5 Dem. 284; *Hartwell* v. *McMaster*, 4 Redf. 389; *Budger* v. *Swain*, 3 id. 487; *Moore* v. *Moore*, 14 Barb. 27–30; *Corwin* v. *Merritt*, 3 id. 341; *Skidmore* v. *Romaine*, 2 Bradf. 122.)   The surrogate was forbidden, by section 2759, subdivision 5, from making the decree, because the interest of the decedent in the personal property of Sweet, Faulkner & Company has not been applied to the payment of his debts.   (Code Civ. Pro. § 2759, subd. 5; *Rogers* v. *Rogers*, 1 Paige, 188, 190.) The surrogate failed to obtain jurisdiction to proceed with the hearing of the case, because on the return day of the citation

he did not have proof before him of the service thereof upon
the parties named therein. (*Doolittle* v. *Ward*, 5 Johns. 359.)
The surrogate was personally disqualified from making the
order, and the decree entered is void for want of authority in
the surrogate himself. (*Converse* v. *McArthur*, 7 Barb. 410;
*Oakley* v. *Aspinwall*, 3 N. Y. 547; *Baldwin* v. *McArthur*,
17 Barb. 414.) The debts of the respondents, Christiana
Smith and Charles J. Bissell, cannot be paid out of the avails
of the sale of the real estate. (Code Civ. Pro. § 2750; *Denise*
v. *Denise*, 41 Hun, 9; *Mowrey* v. *Peet*, 88 N. Y. 45.)

*Chas. J. Bissell* for Bingham, as receiver, appellant and
respondent. The proceedings had herein are in conformity
with the statute, and the surrogate acquired jurisdiction.
(Code Civ. Pro. §§ 2751, 2752, 2753, 2754, 2755; *Sheldon* v.
*Wright*, 7 Barb. 39–48; 5 N. Y. 497; *In re G. Bank*, 39
Hun, 181; *People ex rel.* v. *Faulkner*, 28 N. Y. S. R. 52.)
The wilful devastavit of an executor does not exempt the real
property belonging to a solvent estate from the payment of
debts. (*Barrett* v. *Kincaid*, 2 Lans. 320; *Tucker* v. *Tucker*,
4 Abb. Ct. App. Dec. 428.) It is not necessary that all of
the personal estate in the hands of the executor should be
actually applied to the payment of debts as a condition pre-
cedent to the right to institute these proceedings. (Code Civ.
Pro. § 2759.) The debts of the decedent are not expressly
charged by the will upon his real property. (*Hamilton* v.
*Smith*, 110 N. Y. 159.) The real property sought to be dis-
posed of in this proceeding was not devised expressly charged
with the payment of debts, and is not subject to a valid power
of sale for the payment of debts. (Pom. Eq. Juris. §§ 1170,
1171; *Canfield* v. *Crandall*, 4 Dem. 111.) The real property
embraced within the residuary clause was not converted into
personalty by the direction to sell. (*Osgoodby* v. *Osgoodby*,
115 N. Y. 209; Pom. Eq. Juris. § 1166; *Franks* v. *Bollans*,
L. R. [3 Ch. Div.] 717, 718; *Parker* v. *Linden*, 113 N. Y.
28; *Gourley* v. *Campbell*, 66 id. 169; *Chitty* v. *Parker*, 7
Ves. 271; *Chamberlain* v. *Taylor*, 105 N. Y. 186; *Prentice*

v. *Jansen*, 79 id. 478; *Armstrong* v. *McKelvy*, 104 id. 179.) The surrogate erred in refusing to allow the claim of the petitioner upon the assessment upon the $5,000 of stock inherited by James Faulkner from Samuel D. Faulkner. (2 R. S. [7th ed.] 2300, § 39; *Erwin* v. *Loper*, 43 N. Y. 521; Redfield on Wills [3d ed.] 133; *Clarke* v. *Tufts*, 5 Pick. 337; *Hall* v. *Hall*, 27 Miss. 458; *Cooper* v. *Cooper*, L. R. [7 H. L.] 53.)

*Joseph W. Taylor* for Chrisfield and others, appellant and respondents. The interest in the property of Sweet, Faulkner & Company is, by the will of the testator, exonerated from liability for his debts until all other property is first exhausted. (*Bogart* v. *Hertell*, 4 Hill, 492; *Waldron* v. *Schlang*, 13 N. Y. S. R. 401; *Mott* v. *Ackerman*, 92 N. Y. 539; *Ross* v. *Roberts*, 2 Hun, 90; *Boughton* v. *Thomas*, 46 id. 6; *Dodge* v. *Pond*, 23 N. Y. 69; *Power* v. *Cassidy*, 79 id. 604; *Lent* v. *Howard*, 89 id. 69; *Hood* v. *Hood*, 85 id. 561; *Everett* v. *Everett*, 29 id. 39; *Spraker* v. *Van Alstyne*, 18 Wend. 208, 209; *Heermans* v. *Robertson*, 64 N. Y. 332–344; *Hoes* v. *Van Hoesen*, 1 id. 122; *Kelsey* v. *Western*, 2 id. 507; *Mensch* v. *Mensch*, 2 Lans. 236; 3 Jarman on Wills, 491–526; *Green* v. *Green*, 4 Mad. 148; *Mitchell* v. *Mitchell*, 5 id. 72; *Rhodes* v. *Rudge*, 1 Sim. 85; *Walker* v. *Jackson*, 2 Atk. 624; *Ion* v. *Ashton*, 6 Jur. [N. S.] 879; *Morrow* v. *Bush*, 1 Cox, 185; *Young* v. *Young*, 26 Beav. 522; *Powell* v. *Riley*, L. R. [12 Eq.] 175; Code Civ. Pro. §§ 1837–1860; *O. F. & D. Co.* v. *Price*, 87 N. Y. 542.) If the interest in the assets of Sweet, Faulkner & Company is not exempt from debts to the extent hereinabove claimed, then its liability is co-extensive with the specifically devised real estate and can be called upon to contribute only after the proceeds of the sale of the residuary lands are first applied. (2 Redf. on Wills, 132; Code Civ. Pro. § 992; 3 Redf. on Wills [3d ed.] 369; 3 Jarman on Wills; *Long* v. *Short*, 1 P. Wms. 402; *Silk* v. *Pryme*, 1 Dick, 384; *Tombs* v. *Roch*, 2 Collyer, 490; *Gervis* v. *Gervis*, 14 Sim. 654; *Dugdale* v. *Dugdale*, L. R. [14 Eq. Div.] 234; *Cryder's Appeal*, 11 Penn. St. 72; *Loomis Appeal*, 10 id.

387; *Hallowell's Estate*, 23 id. 223 ; *Chase* v. *Lockerman*, 11
G. & J. 185 ; *Addison* v. *Addison*, 44 Md. 201–203 ; *Far-
num* v. *Bascom*, 122 Mass. 286.) That part of decedent's
property consisting of his interest in the firm of Sweet,
Faulkner & Company is not now liable for any of Samuel D.
Faulkner's debts, including the claim of the receiver here
under the comptroller's assessment, as against the adminis-
trator of Samuel D. Faulkner. (*Erwin* v. *Loper*, 43 N. Y. 521 ;
*Clark* v. *Tufts*, 5 Pick. 337 ; *Hall* v. *Hall*, 27 Miss. 458 ;
*Cooper* v. *Cooper*, L. R. [7 H. L.] 53 ; *Withers* v. *Sowles*, 32
Fed. Rep. 130.)

*C. W. Stevens* for Christiana Smith, respondent. No objec-
tion to any allowance by the decree of the Surrogate's Court
can be raised on this appeal, the appellants having waived all
objections thereto. (*O'Neil* v. *N. Y. C. R. R. Co.*, 15 N. Y.
584 ; *Salisbury Case*, 87 id. 584.) The notice of appeal from
the decree of the surrogate to the General Term is insufficient
to raise any question in this court. (Code Civ. Pro. § 2576 ;
*Berger* v. *Berger*, 111 N. Y. 523 ; *In re McGraw*, 45 Hun,
354.) The appellant, George Hyland, has waived the right to
challenge the jurisdiction of the Surrogate's Court in the pro-
ceedings herein for the sale of real estate. (Code Civ. Pro.
§§ 2474, 2586.) The facts set forth in the petition are suffi-
cient to give the Surrogate's Court jurisdiction. (*German
Bank Case*, 39 Hun, 181 ; *Richmond* v. *Toole*, 3 Lans. 244.)
The provisions of the statute which limit the time for the
petitioner to institute proceedings in the Surrogate's Court to
three years, with the provision for extending that time by
filing a *lis pendens*, apply only to the creditor who institutes
such proceeding. They do not apply to a creditor who comes
in after such proceedings are properly brought by a creditor
entitled to do so, and in such proceedings share in the proceeds
with all other creditors having valid claims against the estate.
(Code Civ. Pro. §§ 2755, 2793; *Morgan* v. *Taylor*, 24 N. Y.
S. R. 60 ; *Paddock* v. *Kirkham*, 102 N. Y. 597 ; *Lambert
Case*, 98 id. 348.)

BRADLEY, J.   The testator, James Faulkner, died seized of a considerable quantity of real property, some of which he specifically devised, and the rest of it came within the residuary clause of his will by which he gave to his heirs and next of kin the residue of his estate, to be divided between and paid to them in cash in five years from his decease, and gave to the executors power to sell and convert into money the property and make the distribution there directed.   In July and August, 1887, James Faulkner, Jr., mortgaged to John Hyland lands specifically devised to him by the testator and situated in the county of Livingston, to secure the payment in the aggregate of forty thousand dollars.   This was done by three mortgages; and by another made in August, 1887, he mortgaged his title and interest as residuary devisee and legatee in the lands covered by that clause to John Hyland to secure the payment of the further sum of twenty thousand dollars.   These mortgages were soon after their dates recorded in the clerk's office of Livingston county.   They were assigned to George Hyland and the assignments recorded in April, 1888.   He was not named in the petition, and for that reason, as well as others, it is urged by his counsel that the surrogate acquired and had no jurisdiction to entertain the proceeding or to make the decree which was made.   It is true, as claimed, that the proceeding is dependent upon the statute for its support, and substantial compliance with it is essential to jurisdiction.   This proceeding was not commenced within three years after letters testamentary were first issued to the executor of the will of the testator.   This is the time within which it is provided that a creditor of a decedent may present his petition to the Surrogate's Court, praying for a decree directing the disposition of the decedent's real property for the payment of his debts. (Code C. Pro. § 2750.)   But the time during which an action is pending in a court of record between a creditor and an executor or administrator of the estate, is not a part of the time so limited " for presenting a petition founded upon a debt which is in controversy in the action; if the creditor has before the expiration of the time so limited, filed, in the clerk's

office of the county where the real property is situated, a notice of the pendency of the action, specifying the names of the parties, the object of the action * * * containing a description of the property in that county to be affected thereby ; and stating that it will be held as security for any judgment obtained in the action." (Id. § 2751.)

It appears by the petition that before the expiration of three years from the time letters were issued to James Faulkner, Jr., and until the time of the presentation of the petition, an action brought by the petitioner as receiver of the First National Bank of Dansville, as creditor, against the executor of the will of the testator was pending, and that before the expiration of such three years the plaintiff duly filed a notice of the pendency of the action, etc. The petition did not state that it was "founded upon a debt which was in controversy in the action ;" and for that reason it is urged that the surrogate took no jurisdiction by it to proceed in the matter. While it is essential that the petition be founded upon such debt to relieve the proceeding from the limiting provision of section 2750, the statute does not in terms require that the fact should appear in the petition ; but does provide what it shall set forth. (§ 2752.)

It would, therefore, seem that such requirement was effectually suppliable by proof. And the fact that the *lis pendens* was filed, etc., in compliance with the statute, was proved. It appeared that the debt upon which the petition was founded was the subject-matter of the action, but there was no evidence other than the inference derivable from the fact that the action had been brought and was pending that the cause of action alleged was contested. The action had been pending about six months at the time of filing the petition ; and in view of its commencement and such pendency, the reasonable presumption is that the claim made by the receiver was disputed, and that the alleged debt was in controversy in the action. This question was not raised on the hearing, nor is it distinctly presented by any exception.

It is contended in behalf of George Hyland that the surro. gate acquired no jurisdiction as against him, because he was not named in the petition. The statute upon the subject provides that the petition must set forth, " as nearly as the petitioner can upon diligent inquiry ascertain them," the names of all the heirs and devisees of the decedent, and also of every other person claiming under them or either of them. (Id. § 2752.) And that a decree can be made only where it is established to the satisfaction of the surrogate that the proceedings have been in conformity to the statute. (Id. § 2759.) Neither was he named in the citation issued upon the filing of the petition. The proceedings progressed, and thus far he could not have been prejudiced by them. But afterwards an affidavit of the petitioner to the effect that certain other persons named, not including Hyland, had or claimed to have a claim or lien on or interest in the premises described in the petition, was filed with the surrogate, who then issued citations to such persons and George Hyland, citing them to appear and show cause why a decree should not be made directing the disposition of the property of testator for the payment of his debts. This citation was served upon Hyland, and he appeared and filed his answer, setting forth as well objections to the jurisdiction of the surrogate as matters upon the merits of the petition. Thereupon the petitioner and the other creditors before mentioned repeated the introduction of the evidence before given; and after the close of the proofs Hyland submitted propositions to the surrogate with request to find them, and excepted to findings of fact and conclusions of law as found by him. As presented by the record there was an irregularity in not having any proof and order upon which to found the citation issued to Hyland, and in not so amending the petition as in that manner to make him a party to it, yet by his appearance generally and taking part in the proceeding he became a party to it, and assuming that the surrogate had jurisdiction of it, the power as against Hyland to make a decree was as effectual as if he had originally been made a party. While appearance or consent cannot confer

upon a tribunal jurisdiction of a subject-matter not within it, the rule is otherwise as to the jurisdiction of the person. In the present case not only the subject-matter was within the jurisdiction of the surrogate, but the petition contained the elements essential to its support, although further facts were necessary to the maintenance of the proceeding, and so far as they existed were available for such purpose. (Id. § 2474.) The statute provides that the petition must set forth as nearly as the petitioner can, upon diligent inquiry ascertain, a general description of the decedent's real property, and interest in real property within the state (Id. § 2752), which may be disposed of in the order prescribed in section 2763. The testator had an interest in what was known as the "Tolles House," which was not mentioned in the petition; but it is conceded that the petitioner may have been excused for that omission, as it may not have been ascertained upon diligent inquiry by him. But the testator was seized of a farm situated in the county of Steuben. This was described in the petition, and not included in the *lis pendens*, and for that reason it cannot be disposed of for the payment of the debts of the testator by direction of any decree of the surrogate, since three years from the time of issuing the letters testamentary have expired, and had at the time of filing the petition. This real property was the subject of specific devise by the will, and the surrogate found that the failure by *lis pendens* to subject that land to this proceeding was not excused on the ground that it could not by diligent inquiry have been ascertained by the petitioner. While that omission does not go to the jurisdiction of the surrogate, it does to some extent prejudice Hyland, because that land is not covered by his mortgages, and description of the property which they did cover was embraced in the *lis pendens* filed. Nor did Hyland have any opportunity within the three years to cause or suggest that the Steuben land be charged by this proceeding. The statute contemplates that all the lands of a decedent ascertainable by diligent inquiry of the petitioner, shall be subjected to a proceeding having the purpose of this one, although in a proper case for it a por-

tion of the premises may be released from the lien. (Id. § 2751.) From this mistake of the petitioning creditor, and as against him, Hyland should have been relieved by direction that the specifically devised real property described in the *lis pendens* be mortgaged for only the same proportionate amount of the deficiency appearing on the sale of the residuary lands, with which it would have been charged if the Steuben land had not been omitted. That land was valued at $2,162.50.

The surrogate found that there came into the hands of James Faulkner, as executor of the will, a large amount of personal property, which could have been applied to the payment of the debts of the decedent, and which was not so applied, but was converted to his own use and squandered by such executor; and that "the total value of the personal property does not exceed five thousand dollars." It does not appear what was the amount of such property left by the testator, but it is urged that the amount of it, whatever it was, must be applied before his real estate can lawfully be appropriated to the payment of his debts; and that the conversion and waste of it by an irresponsible executor does not qualify the proposition, and for its support reference is made to the statute which provides that a decree directing the disposition of real property can be made only where after due examination it is established to the satisfaction of the surrogate "that all the personal property of the decedent which could have been applied to the decedent's debts and funeral expenses has been so applied; or that the executors or administrators have proceeded with reasonable diligence in converting the personal property into money, and applying it to the payment of those debts and funeral expenses; and it is insufficient for the payment of the same, as established by the decree." (Id. § 2759.) Although this phraseology differs from that of the former statute its import is substantially the same. (2 R. S. 102, § 14; L. 1837, ch. 460, § 41; 4 Edm. Sts. 494.) The necessity of treating the personal property of a decedent as the primary fund for the payment of his debts and the application of it to that purpose, so far as it can with reasonable diligence be done, before resorting to his

real property was then and now is the statutory requirement. The personal property of the decedent was insufficient for the payment of his debts. They at the time of filing the petition amounted to upwards of thirty thousand dollars, and his personal estate did not then exceed five thousand dollars. And what is reasonable diligence within the contemplation of the statute is somewhat dependent upon circumstances, which in this instance were peculiar. This proceeding was taken not by the personal representatives of the testator, but by a creditor or the representative of certain creditors and solely in their interest. The debt of the decedent upon which it was founded was developed a short time only, before the expiration of three years after letters testamentary were first issued upon his will. Whatever of the personal estate then remained was not in a situation to be applied on the debt, and the inference was permitted that in view of such situation it was not by the exercise of reasonable diligence available for application to that purpose within the time required or up to the time of filing the petition. The account and judicial settlement of the temporary administrator (who was such intermediate the revocation of the letters to James Faulkner, Jr., and the issue of letters to Lester B. Faulkner late in the year 1887) in connection with other evidence on the subject justified the conclusion of the surrogate upon the question now under consideration, that a case was presented authorizing the proceeding upon the petition and a decree therein directing the disposition of the real property for the payment of the debts of the decedent. (*Moore* v. *Moore*, 14 Barb. 27.) And the question whether or not the creditors were chargeable, by way of reduction of the debts of the decedent, with the amount of the personal property left by him and which was appropriated and wasted by the executor, we think was properly disposed of by the surrogate. There was no question of *laches* in that respect on the part of the creditors presented for consideration. The testator voluntarily selected his personal representatives to take and administer his estate. It may be assumed that the responsibility of the executor was personal merely, and whatever view may be

taken in cases where are appointed administrators who must secure the performance of their duties by the requisite bond, there is no reason for denial of the right of creditors to the payment of their debts out of the proceeds of the real estate of a testator whose executor has squandered the personal property which came to his hands as such. The cases upon the subject to which our attention has been called do not aid the appellant. They were those where the applications to sell real estate for the payment of debts were made by executors or administrators, or where a creditor seeking such relief was chargeable with extraordinary delay or *laches*.

At the time of the death of Samuel D. Faulkner, he was member of the firm of Sweet, Faulkner & Co., owning certain patents for improvements in mowers and reapers and engaged in the business of manufacturing. The property was both real and personal, and the interest in the firm of, Samuel D. Faulkner, who died intestate, was three-eighths. The testator was his sole heir and next of kin; and by his will he gave and devised his interest in the property and business of the firm to James Faulkner, Jr., free from any control of his executor, with direction to receive and pay the net income of such interest to certain persons named, and eventually that distribution of the property or its proceeds be made between persons as directed by the will. The business of the firm was continued, and so far as appears, it had not ceased to continue at the time this proceeding was instituted, when the three-eighths interest in the assets of the firm had the value of $15,000. And James E. Crisfield having been appointed as such, then was testamentary trustee under that provision of the will. While he insists that such interest in the property of the firm of Sweet, Faulkner & Co. is by the will exonerated from liability for the debts of the testator, until all his other property is exhausted, it is contended by Hyland that such property should be treated as personal property and be applied before resort is had to the real estate of the decedent for the payment of his debts. The surrogate found that such interest of the testator in the firm assets were "not liable for

the payment of his debts until after all the lands embraced in residuary clause of his said will and thereby devised are first sold and applied." No exception was taken to this finding by any party other than Crisfield, and the portion of the decree entered in conformity to such findings, by which the firm assets belonging to the estate are put on the same footing as the specifically devised lands, is not by his notice of appeal made the subject of review by him. That question, therefore, requires no further consideration.

It is also urged that the surrogate was personally disqualified to entertain the proceedings and make the decree because an action entitled, "The People of the State of New York ex rel. Edwin A. Nash, as Surrogate, etc., v. James Faulkner and Henry Faulkner, survivors of Samuel D. Faulkner, deceased," had been brought, tried and a recovery in it had against the defendants for upwards of $3,000. The claim founded on the judgment was presented in this proceeding, in behalf of the People by their attorney, against the estate and was rejected by the surrogate as not a lien upon the real property for the reason that no *lis pendens* had been filed in the action. The judgment-roll was put in evidence, but is not set out in the record. The purpose of the action does not appear. It cannot, therefore, in view of its title, be assumed that the surrogate had any personal interest in it or had any relation to it which would make the question raised for the first time on review available. The rule would be otherwise if the case came within the statute, declaratory of the common law, that no judge can sit in a cause in which he is a party or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties. (2 R. S. 275, § 2.) In such case his disqualification to sit as judge cannot be waived so as to deny the right of a party to cause judgment to be vacated as void. (*Oakley* v. *Aspinwall*, 3 N. Y. 547; *Converse* v. *McArthur*, 17 Barb. 410; *Baldwin* v. *McArthur*, Id. 414.) This proceeding was not founded upon the debt represented by that judgment, nor affected by its existence. And when it was presented, if

objection had been taken, the question would have arisen whether the relation of the surrogate to it was such as to disqualify him to adjudicate upon it as an asserted claim against the estate of the decedent. But no question being raised at the hearing and the claim having been rejected, there is now no opportunity to effectually assert that the officer was disqualified to entertain the proceeding to its determination and that the decree is void. That question does not necessarily depend upon the fact whether or not he could lawfully adjudicate in the proceeding upon the claim represented by the judgment. The part which it did have in the proceeding was incidental merely and now justifies no interruption to the result of its main purpose represented by the decree.

It is now contended that the claim of Christiana Smith was improperly allowed by the decree as a charge upon the real property of the decedent, as it was not the subject of an action, and, therefore, did not come within the provision of section 2751 of the Code. Her claim was disputed and the matter was referred pursuant to the statute. (2 R. S. 88, § 36, as amended by L. 1859, ch. 261.) It was pending at the time of filing the petition, and judgment was recovered by her upon the report of the referee July 31, 1888. Before the expiration of three years from the time letters testamentary were issued she caused a *lis pendens* to be filed. Although the method so provided for the presentation and determination of the controversy arising upon a disputed claim against the estate of a deceased person is a special proceeding (*Mowry* v. *Peet*, 88 N. Y. 453), the statute provides that "the same proceedings shall be had in all respects  *  *  *  as if the reference had been in an action in which such court might, by law, direct a reference,  *  *  *  and the judgment of the court thereupon shall be valid and effectual in all respects as if the same had been rendered in a suit commenced by the ordinary process." (2 R. S. 39, § 37.) The provision for filing the *lis pendens* has relation in terms to actions only. And while there may be some doubt whether it can, by construction, be deemed to embrace such a controversy instituted by the reference pro-

vided for, it is quite evident, in view of the statute just men-
tioned, that the intent was to give to it the benefit of the
practice pertaining to actions so far as practically applicable.
In that view it was held in *Paddock* v. *Kirkham* (102 N. Y.
597), that although the statute provided for issuing a commis-
sion to take testimony out of the state, only in case of issue of
fact in an action pending in a court of record, it was issuable
to take testimony in a controversy in the reference of such
disputed claim.   The same reason is applicable to the use of
*lis pendens*, which may as in this instance be essential to
render recovery effectual as a means for its collection.   But
this question is presented by no exception, which is necessary
for the purpose of its consideration on this review.

Upon the appeals of the petitioner and Crisfield it is in
their behalf argued that the testator was the owner of the
fifty shares of the capital stock of the bank left by his son
Samuel D. Faulkner; and that the assessment of five thousand
dollars upon such stock, was chargeable against his estate, and
should have been included in the amount directed by the
decree to be paid with the proceeds of the real estate.   This
claim is based upon the fact that he was the sole heir and next
of kin of his son Samuel, and after his death took it into his
possession, voted it with his other stock, and received such
dividends as it produced.   But his control of it as well as the
receipt of dividends was consistent with the fact that he was
administrator of the estate of his son.   While he duly adver-
tised for claims existing against his intestate, and may have paid
such as were presented and undisputed, he never made any
judicial settlement of his accounts as administrator, nor was
the stock of his son transferred to him on the books of the
bank.   The residuary interest in the stock after payment of
the debts of his intestate belonged to him, but while he held
the relation of administrator, which he could terminate only
through a final judicial settlement of his accounts, it is not
seen how he could be treated as having the legal title to the
stock other than in his representative capacity.   An adminis-
trator may, however, after the expiration of the time pre-

scribed by statute for the presentation of claims by creditors,
make distribution of the assets to the next of kin, and not be
chargeable to those whose claims were not presented. (2 R..
S. 89, § 39; *Erwin* v. *Loper*, 43 N. Y. 521.) This is not
applicable to retention by the administrator, who is also the
next of kin, and has not been discharged by and upon judicial
settlement of his accounts from that relation. But if in this
instance he had procured a transfer upon the bank books of
the stock to himself individually a different question may have
been presented. There was no error in not treating the
assessment upon the fifty shares as the debt of James Faulkner,
deceased.

The remaining questions have relation to the nature and
effect of certain provisions of the will and especially as applied
to the lands embraced within the residuary clause. The direc-
tion to the executors to pay the debts of the testator did not
make them a charge upon his real estate. (*Hamilton* v. *Smith*,
110 N. Y. 159; *In re Powers*, 124 id. 361.) Nor was there
an equitable conversion of the real estate within that clause
into personalty. The testator there gave the residue of his ·
estate to his "heirs and next of kin in the same portions in
which" it "would be divided or distributed" in case of his
death intestate, directed it to be distributed and paid in cash
in five years from his decease, and for that purpose gave to the
executors power of sale. The language used does not import
that the testator intended the real should be treated as per-
sonal property, but the contrary is fairly indicated by giving
the property to his heirs as well as next of kin to be divided
as if no will were made. And it seems that the power of sale
was given solely for the purpose of the execution of the pro-
visions of this clause of the will, and that on failure to execute
the power, the persons in view, capable to do so, would retain,
as heirs, the realty, as such, so given them. (*Gourley* v.
*Campbell*, 66 N. Y. 169; *Parker* v. *Linden*, 113 id. 28;
*Chamberlain* v. *Taylor*, 105 id. 185.) No other question
requires consideration.

The judgment of the Supreme Court and the surrogate's

decree should be so modified that the specifically devised real estate, described in the latter be mortgaged for no greater portion of the deficiency remaining after the sale of the residuary lands than would have been its proportion if the Steuben farm valued at two thousand, one hundred and sixty-two $\frac{50}{100}$ dollars had been charged by this proceeding with liability to pay its portion at such valuation, and with such modification the judgment should be affirmed.

All concur.

Judgment modified and as modified affirmed.